104 N.J. Super. 126 (1969)
249 A.2d 3
ALAN R. SCHMOLL, ESQUIRE, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF CORNELIUS PAYNTER, SR., DECEASED, PLAINTIFF-APPELLANT,
v.
ROSHIER G. CREECY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1968.
Decided January 10, 1969.
*128 Before Judges GOLDMANN, KOLOVSKY and CARTON.
Mr. Walter Gollub argued the cause for appellant.
Mr. Charles A. Cohen argued the cause for respondent (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The main question on this appeal is whether an action may be maintained under the Death Act, N.J.S. 2A:31-1 et seq., on behalf of illegitimate children to recover for the alleged wrongful death of their putative father. We hold that it may not.
The appeal comes before us on an agreed statement of facts in lieu of record, pursuant to R.R. 1:6-2.
On November 5, 1966 decedent Cornelius Paynter, Sr. was a passenger in an automobile owned and operated by defendant Creecy when it went off the road, upset and overturned in a body of water. Paynter drowned.
Decedent had married Doris Jean Davis in Kentucky and had two children by her. In 1956 he separated from his wife and took up residence in Camden, N.J. At the time of his death the wife and two children were and continue to *129 be residents of Kentucky. Decedent was under a court order to pay $15 a week for the support of the children.
In Camden decedent lived with Evereen Randells, allegedly holding themselves out as man and wife. Five children were born to them and were allegedly members of their household at the time of decedent's death.
The legal wife applied for letters of administration ad prosequendum, as did decedent's mother. After the surrogate had certified the case to be one of doubt and difficulty, the Camden County Court appointed plaintiff general administrator and administrator ad prosequendum of decedent's estate. Plaintiff then brought an action against defendant under the Death Act on behalf of the Kentucky wife and her two children in the Superior Court, Law Division (Docket L-18757-66). He subsequently also instituted a similar action in the same court on behalf of the five illegitimate children "for the wrongful deprivation of their support" by reason of decedent's death, as well as for recovery of funeral expenses incurred by Evereen Randells (Docket L-21595-66).
The two actions were ordered consolidated for trial. Defendant then moved to dismiss the complaint filed on behalf of the illegitimate children on the ground that they were not entitled to recover as a matter of law and plaintiff was not entitled to recover funeral expenses. Counsel for decedent's legal wife and children joined in the argument in support of the motion. The trial judge filed a written opinion and entered the order here under appeal, dismissing the complaint.
Sometime after the notice of appeal was filed this court, on application of the attorney for appellant, entered an order relieving him from the necessity of filing his brief until the case of Levy v. Louisiana, then pending in the United States Supreme Court, was decided. The opinion in that case came down on May 20, 1968, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436.
*130 Although decedent's wife and legitimate children (or plaintiff administrator ad prosequendum as to them) are not named as respondents on this appeal, they were parties to the motion below, have a direct pecuniary interest in our determination, and through counsel join in the brief filed by defendant.
N.J.S. 2A:31-4, part of the Death Act, as it read at the time of decedent's death, provided:
"The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered." (Italics ours)
Although, as plaintiff notes in his brief, this case does not deal with the succession of property, yet since only persons who are capable of inheriting a decedent's personal property can qualify for any portion of the recovery, the law dealing with such succession must be consulted. N.J.S. 3A:4-2 provides that in the case of a decedent dying intestate,
"One-third of the personal property shall be distributed to the intestate's husband or widow, as the case may be, and the residue in equal portions among the intestate's children and such persons as legally represent any child who may have died."
And N.J.S. 3A:4-7, dealing with illegitimate children, provides:
*131 "For the purpose of descent and distribution under this chapter [N.J.S. 3A:4-1 et seq.] to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him, and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter." (Italics ours)
At common law an illegitimate child could not inherit from either his mother or putative father. Hammond v. Pennsylvania R.R. Co., 31 N.J. 244, 251 (1959). N.J.S. 3A:4-7 changed that rule insofar as permitting the illegitimate child to inherit through and from his mother. No similar provision has been adopted with respect to the father. It therefore follows that since an illegitimate child may not take by intestate succession from his father, he is precluded from maintaining a wrongful death action under N.J.S. 2A:31-4 when it is his father, rather than his mother, for whose death the tortfeasor is allegedly responsible. Cf. DiMedio v. Port Norris Express Co., Inc., 71 N.J. Super. 190 (Law Div. 1961); and see Annotation, "Right of recovery, under wrongful death statute, for benefit of illegitimate child or children of decedent," 72 A.L.R.2d 1235, 1239 (1960).
Plaintiff contends that to deny illegitimate dependent minor children of the right to sue for the deprivation of their support and maintenance by reason of the alleged wrongful death of their natural father violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution as well as Article I, paragraphs 1 and 5 of the New Jersey Constitution (1947). As to the federal constitutional aspect, they rely on Levy v. Louisiana, above.
In that case appellant sued on behalf of five illegitimate children to recover under the Louisiana statute for the wrongful *132 death of their mother. The statute (La. Civ. Code, Art. 2315) provided that the right to recover damages for the wrongful death of a person shall survive for a period of one year from death in favor of "the surviving spouse and child or children of the deceased, or either such spouse or such child or children." The Louisiana District Court dismissed the suit. The Court of Appeal affirmed, holding that "child" in Article 2315 meant "legitimate child." 192 So.2d 193, 195 (1966). The Louisiana Supreme Court denied certiorari. 250 La. 25, 193 So.2d 530 (1967).
On appeal, the United States Supreme Court reversed, three judges dissenting. The majority held that illegitimate children are not "nonpersons"; they are human beings and clearly "persons" within the meaning of the Equal Protection Clause, and while a state has broad power in making classifications, "it may not draw a line which constitutes an invidious discrimination against a particular class." The test is "whether the line drawn is a rational one." The court then went on to say:
"* * * The rights asserted here involve the intimate, familial relationship between a child and his own mother. * * *
Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother by appellees. These children, though illegitimate, were dependent on her; she cared for them and nurtured them; they were indeed hers in the biological and in the spiritual sense; in her death they suffered wrong in the sense that any dependent would."
The majority of the court accordingly held that it would be invidious to discriminate against such children when no action of theirs was possibly relevant to the harm done their mother.
Justice Harlan's vigorous dissenting opinion pointed out that at common law no person had a legally cognizable interest in the wrongful death of another, and no person could inherit the personal right of another to recover for tortious injuries to his body. Louisiana had by statute created both rights in favor of certain classes of persons. Like most *133 other states, it had chosen to define those classes of proper plaintiffs in terms of their legal rather than their biological relation to the deceased. The rights at issue stemmed from the existence of a family relationship, and Louisiana had decided it would not recognize that relationship unless the formalities of marriage or the acknowledgment of children by the parent in question had been complied with. The dissentors found obvious justification for that decision, and held that the classification Louisiana had adopted was constitutionally permissible.
Basic to any consideration of the impact of the Levy case is the fact that our statute, N.J.S. 2A:31-4, differs significantly from Louisiana's. As noted, the Louisiana wrongful death statute gave a right of action to "the surviving spouse and child or children of the deceased, or either such spouse or such child or children." The problem in Levy was one of statutory construction: Did "children" include illegitimates? Compare the similar problem of statutory construction in In re Calogero, 51 N.J. 345 (1968) ("marry," as used in N.J.S. 3A:4-7, embraces a bigamous ceremonial marriage so as to legitimize a child born out of wedlock for the purpose of descent and distribution to, through and from him); and Hammond v. Pennsylvania R.R. Co., above (illegitimate children held "children" within the meaning of the Federal Employers' Liability Act, 45 U.S.C.A. § 51).
N.J.S. 2A:31-4, as it stood prior to 1948, gave a right of action "for the exclusive benefit of the widow, surviving husband, and next of kin of the decedent," to be distributed to them "in the proportions provided by law for the distribution of the personal property of intestates," L. 1917, c. 180, § 1; R.S. 2:47-4, and this without regard to their legal ability to inherit from the deceased. Following amendments in 1943 (L. 1943, c. 79) and 1948 (L. 1948, c. 429) the 1951 Legislature, in revising Title 2 of the Revised Statutes, expressly provided that recovery in a Death Act proceeding "shall be for the exclusive benefit of the persons *134 entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same." This language remained unchanged when the statute was further amended by L. 1960, c. 194, so that at the time decedent died N.J.S. 2A:31-4 read as quoted earlier in this opinion.
The statutory plan that all entitled to take must first qualify as persons who would inherit any personal property of a decedent dying intestate, still remains in force. Membership in the class is an indispensable condition to the right of any part of the recovery. No such condition of eligibility is imposed by the Louisiana statute.
In applying the Equal Protection Clause to social and economic legislation, the United States Supreme Court has recognized that wide latitude must be given legislators in making classifications. Morey v. Doud, 354 U.S. 457, 465-466, 77 S.Ct. 1344, 1349-1351, 1 L.Ed.2d 1485 (1957). Legislation which confers a mother's intestate property on her illegitimate child, but which does not correspondingly transmit the father's intestate property, does not, in our view, constitute an arbitrary classification. Reason supports the difference in treatment and, as defendant realistically points out, no observant person can fail to recognize at least some substance in the reason. A man, having had his will with the woman and physically untouched by the experience, too often goes on his way, leaving no trace behind him. With the woman, pregnancy soon becomes an obvious physical fact. With rare exception, she delivers her child in the presence of others  a recordable and registerable event. That a particular woman is the mother of the child is a fact not too difficult to prove in most cases. The child remains with the mother and is nourished and reared by her; the opposite is generally the case with the father. Apart from all this, there is also the consideration that if a woman is promiscuous, she cannot be sure of just who is responsible for her pregnancy and the child born of her.
*135 The line drawn by the Legislature is therefore a rational one. We find no invidious distinction made by its failure to enact a statute to include in N.J.S. 3A:4-7 a provision allowing intestate succession between a man and his illegitimate children.
All legislative attempts in recent years to provide for the descent and distribution of intestate property to, through and from illegitimate children with respect to the father have uniformly failed. Assembly Bill 630 of the 1963 Legislature would have amended N.J.S. 3A:4-7 by adding the following sentence:
"When the father of an illegitimate child has been determined by the order or judgment of a court of competent jurisdiction, such child shall be treated the same as if he were the legitimate child of such father, so that the child and his issue shall inherit and take from such father, and such father from the child and his issue."
The Statement attached to the bill noted that the amendment would satisfy the requirements of the federal law and qualify an illegitimate child for social security benefits, thereby making a new resource available for its support. The bill died in committee.
Assembly 630 (1963) was reintroduced in the 1964 Legislature as Senate Bill 291. Although it passed both houses, the Governor filed it in the State Library without his approval, noting that in the interests of fairness and stability, such legislation ought expressly to be limited to cases where the death of the putative father occurred after the effective date of the bill. He further noted that the bill failed to specify any limitation upon the time after the father's death within which a suit to establish paternity must be commenced.
In 1965 Assembly Bill 601 attempted to modify the first sentence of N.J.S. 2A:31-4 as follows:
"The amount recovered in proceedings under this chapter shall be for the [exclusive] benefit of the persons entitled to take any intestate property of the decedent, and for the benefit of illegitimate *136 children of the decedent in the proportions in which they are entitled to take the same, and for this purpose illegitimate children are to be treated as legitimate children." (Brackets indicate omitted language, italics new material)
The Statement attached to the bill stated that under the Death Act, as interpreted in DiMedio v. Port Norris Express Co., Inc., above, 71 N.J. Super. 190 (Law Div. 1961), illegitimate children were not entitled to recover upon the death of a parent, even though supported by that parent. (This reading of DiMedio was, of course, too broad; there only could be no recovery for the death of the father.) The expressed purpose of the bill was to bring the Death Act into conformity with the Workmen's Compensation Act, N.J.S.A. 34:15-13, which entitles illegitimate children to share as dependents in the distribution of compensation awarded for an employee's death resulting from a work-connected accident. Assembly 601 (1965) died in committee.
The 1965 Legislature also had before it Senate Bill 296, which would have amended N.J.S. 3A:4-7 by adding the following after the first sentence:
"Where the relationship of father and child shall have been determined and established by a court of competent jurisdiction, provided that the action to determine and establish such a relationship was instituted before or within 1 year of the death of said father, such child shall be treated the same as if he were the legitimate child of said father, so that the child and his issue shall inherit and take from said father, and said father from his child and his issue."
The amendment was not to be applicable if the father died prior to the effective date of the act. Senate 296 (1965) was obviously intended to meet the Governor's objections to Senate 291 (1964). It passed both houses but was filed by the Governor in the State Library without his approval and so never became law.
Assembly Bill 191 of the 1966 Legislature was identical to Assembly 601 (1965). It died in the Senate Committee after having been passed by the Assembly.
*137 The 1967 Legislature witnessed the introduction of Assembly Bill 720 which would have amended N.J.S. 2A:31-4 to provide that the amount recovered in proceedings under the Death Act shall be "for the exclusive benefit of the surviving spouse, children, parents, brothers and sisters of the decedent, persons standing in loco parentis to the decedent and persons to whom the decedent stood in loco parentis." In determining the proportions such persons were to take the court, sitting without a jury, was to consider "their dependency on the decedent," as well as (as then provided by the statute) their age and physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability of other means of support, and any other relevant factors which would contribute to a fair and equitable apportionment of the amount recovered. The bill died in committee.
Senate Bill 398, introduced in the 1968 Legislature, was identical to Assembly 720 (1967) and suffered the same fate. The bill has been pre-filed for introduction in the 1969 session as Senate Bill 190.
In light of these attempts to amend the applicable legislation, it cannot be said that the legislative mind has not dwelt, albeit without positive result, on the subject of obliterating entirely the difference under the law between those born of a legal marriage and those born out of wedlock. New Jersey, through its Legislature and Governor, has shown that it is not yet ready to eliminate the classification which presently stands in the way of illegitimate children recovering under the Death Act for the death of their putative father.
To declare, as plaintiff urges, that the legislative classification as reflected in N.J.S. 2A:31-4 and 3A:4-7 is unconstitutional because it does not provide for inheritance from the father, would not profit the illegitimate children. To strike down the statute would return them to the common law rule under which they could inherit from neither *138 mother nor father. Actually, what plaintiff asks us to do is to insert, by judicial fiat, statutory language which would give illegitimate children the right to inherit from their putative father and therefore the right to recover under the Death Act. Who shall inherit the property of an intestate is exclusively for the Legislature to declare by general law. As was said in Adams v. Atlantic County, 137 N.J.L. 648 (E. & A. 1948),
"* * * it is not the judicial function to add beneficiaries to those specified in the statutes. The specification of who shall benefit and under what conditions is a legislative function. Our function is to construe the statute as written and to interpret the legislative intent, but we cannot under the guise of interpretation extend a statute to include persons not intended. * * *" (at page 652)
Cf. Bogue Electric Co. v. Board of Review, 21 N.J. 431, 435 (1956).
We have already noted that plaintiff further argues that to deny the illegitimate children the right to share in the recovery for decedent's death violates Article I, paragraphs 1 and 5 of our 1947 Constitution  paragraph 1 because they have a property right in the support of the father, and paragraph 5 because they have been discriminated against in the exercise of a civil right because of ancestry. The argument assumes its premise  that a right exists. Such a right must be found in the statutory law.
Insofar as illegitimate children are concerned, the Legislature has for policy reasons, undoubtedly rooted in practical considerations, chosen to lift the common law rule of non-inheritance and to permit such children to share in a Death Act recovery, but as to their mother only. No such right exists as to the natural father, and we may not create one where the Legislature has withheld its hand.
Finally, plaintiff claims that an action should lie against defendant for the recovery of funeral expenses incurred for the deceased. Prior to 1967 there could be no such recovery under the Death Act. L. 1967, c. 307, now *139 N.J.S. 2A:31-5, made recovery possible. The 1967 act became effective on February 27, 1968. Section 2 recited that the act was not to apply in the case of injuries suffered prior to the effective date. Since the accident and death in question occurred on November 5, 1966, plaintiff is not entitled to recover funeral expenses.
The order is affirmed.