112 N.J. Super. 540 (1970)
271 A.2d 919
M., PLAINTIFF,
v.
M., DEFENDANT.
Superior Court of New Jersey, Juvenile and Domestic Relations Court, Morris County.
Decided December 8, 1970.
*541 Mr. John P. Gleason of the Morris County Legal Aid Society, attorney for plaintiff.
Mr. Lewis Stein, attorney for defendant.
POLOW, J.J.D.R.C.
Defendant seeks an order establishing his right to visit with his illegitimate children. Plaintiff was previously awarded suppport from defendant for her three infant children born out of wedlock. He is the natural father of the children, the parties having lived together and held themselves out as husband and wife for more than 15 years although they were never married. Their relationship produced one child on December 17, 1962 as well as twins born on March 21, 1966. Plaintiff separated herself from defendant in July 1969 and has refused to permit him access to or visitation with the children ever since.
Defendant asked for visitation privileges at the first hearing but plaintiff opposed it, relying on N.J.S.A. 9:16-1 which predicates the putative father's "right of custody, control and access" upon the "mother's consent." Plaintiff having refused to consent, an order was entered denying visitation, which order defendant now seeks to have vacated. He has partially complied with his support obligations and promises full compliance in the future.
The limiting provisions of the statute relied upon by plaintiff are harsh and unrealistic if they must be applied to the circumstances of this case. This court is, of course, bound by specific legislative directive and may not usurp the function of the Legislature, Adams v. Atlantic County, 137 N.J.L. 648 (E. & A. 1948); Schmoll v. Creecy, 104 N.J. Super. 126, 138 (App. Div. 1969), whether or not the 1913 enactment is relevant today.
The stated policy grantnig the mother of illegitimate children exclusive custody and control seemingly confers upon her the power to consent or withhold consent to "access" for the putative father. This presumably is an advance from, but based upon the ancient common law concept that a *542 bastard is nullius filius, the child of no one. The putative father was not then obligated to support his illegitimate child and the rights of inheritance by or from such a child were severely restricted. See 10 Am. Jur.2d Bastards, § 8. Under the provisions of a statute adopted in 1929, the mother now has a right to seek support from the natural father for her illegitimate child. N.J.S.A. 9:16-2 et seq. Prior to that enactment the father could have been compelled to support only if the "child would otherwise be a public charge." Ousset v. Euvrard, 52 A. 1110 (Ch. 1902). Since then there has been a discernible trend in the decisional law in this State and other jurisdictions toward recognition of the rights and obligations of a putative father more comparable to those of a natural father than under old common law concepts. For a comprehensive review of the authorities supporting this conclusion see In re Guardianship of C., 98 N.J. Super. 474 (J. & D.R. Ct. 1967).
The significant inquiry in any proceeding involving custody and visitation of children must surely be what is in the best interests of the children. Lavigne v. Family and Children's Society of Elizabeth, 11 N.J. 473 (1953); Baker v. Baker, 81 N.J. Eq. 135 (Ch. 1913). If we resolve that visitation by the father in this case would be in the children's best interests, how does the statutory provision limiting access apply to his demand for visitation privileges?
Plaintiff and defendant lived together for 15 years during which time they held themselves out as man and wife not only to the public but also to their children. The children know defendant as their father. They bear his name. I find that plaintiff's continuous holding out of the defendant as her husband and father of her children, and the fact of her living with him as his wife for so many years, constitutes "consent" to his access to the children for the purpose of this statute.
Unquestionably, the welfare and best interests of the children are paramount considerations in any determination concerning custody and visitation problems, Baker v. Baker *543 and In re Guardianship of C., supra, and I find that as a matter of fact reasonable visitation by defendant with his children would not be detrimental to their welfare and best interests. Any right plaintiff may have had under the statute to withhold consent has been waived by her conduct. Her previous implied consent arising from the fact of their living together for 15 years cannot be revoked at this time.
It is relevant to note that at the time of the adoption of this statute substantially in its present form, L. 1913, c. 331, §§ 1, 2 (1924 Suppl. §§ 97-29a, 97-29b), supplement to L. 1902, c. 92, this State recognized common law marriages. Sturm v. Sturm, 111 N.J. Eq. 579, 588 (Ch. 1932); Schaffer v. Krestovnikow, 88 N.J. Eq. 192 (Ch. 1917) aff'd, 89 N.J. Eq. 549 (E. & A. 1918); Bey v. Bey, 83 N.J. Eq. 239 (Ch. 1914). Had these parties lived under these circumstances prior to the enactment of this provision in 1913, they may well have been husband and wife as a matter of law and the children consequently legitimate. Therefore, it is reasonable to conclude that the Legislature did not intend to include this kind of situation within these particular statutory limitations. Furthermore, the statute itself declares its intention "to be declaratory of the existing law on this subject." N.J.S.A. 9:16-1. The case law existing at that time specifically recognized the visitation rights of the natural father of illegitimate children where he contributed to their support, absent a finding that such visitation would be detrimental to the children's best interests. Baker v. Baker, supra.
An order will be entered granting reasonable rights of visitation to defendant subject to such further orders of the court for the protection of the best interests of the children as may be appropriate.