THE PEOPLE *ex rel.* SHARON VALLERA, n/k/a Sharon Studnicka, Plaintiff-Appellee, *v.* ARTURO RIVERA, Defendant-Appellant.

Third District   75-232

Opinion filed June 30, 1976.

BARRY, J., dissenting.

Joseph C. Polito, of Joliet, for appellant.

Martin Rudman, State's Attorney, of Joliet (Michael T. Neese, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This suit began as a paternity action brought by Sharon Vallera against defendant Arturo Rivera as the father of her unborn child. Defendant entered his appearance, admitted that he was the father, and was ordered to pay medical expenses and support. After the baby was born, defendant filed a petition requesting visitation rights, and a hearing on the petition was held in December, 1972. After a delay of over two years, the trial court entered an order in March, 1975, denying the petition. Defendant appeals, arguing that the father of an illegitimate child cannot be denied visitation rights as a matter of law.

The Illinois Paternity Act, section 12 (Ill. Rev. Stat. 1971, ch. 106¾, par. 62) which provided that the father of a child born out of wedlock had no right to the custody or control of his child, was construed to deny the father of an illegitimate child any right to visit his child. *(DePhillips v. DePhillips* (1966), 35 Ill. 2d 154, 219 N.E.2d 465.)[1] However, section 12 (par. 62) has been declared unconstitutional in that it deprived the father of illegitimate children the due process right of all parents to a fitness hearing in a child custody proceeding and thus denied him equal protection of law as guaranteed by the 14th Amendment to the United States Constitution. *(Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208; *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 284 N.E.2d 291.) In *Slawek,* the Illinois Supreme Court held that notice and consent of the putative father are required in an adoption proceeding because the *Stanley* decision " * * * recognized

---

[1] Apparently Illinois was the only State which, as a matter of law, refused to consider a putative father's request for visitation rights. See Annot., 15 A.L.R.3d 887 (1967).

that the interests of the father of an illegitimate child are no different from those of other parents." (52 Ill. 2d 20, 22, 284 N.E.2d 291, 292.) (Contra, *In re Malpica-Orsini* (1975), 36 N.Y.2d 568, 370 N.Y.S.2d 511, 331 N.E.2d 486.) As a result of the decisions in *Stanley* and *Slawek,* the Illinois Adoption Act was amended in 1973 to require the consent of the father, as well as the mother, of an illegitimate child in an adoption proceeding. (Ill. Rev. Stat. 1975, ch. 4, pars. 9.1—1E and 9.1—8.) Since the father of an illegitimate child is no longer barred from obtaining custody, courts now must consider the familiar "best interests of the child" standard in each case where a putative father seeks to obtain custody. *Vanderlaan v. Vanderlaan* (1st Dist. 1972), 9 Ill. App. 3d 260, 292 N.E.2d 145.

We believe the public policy of Illinois, as indicated by the Supreme Court and the legislature, requires recognition of the right of a putative father to visit his child upon a showing that his visits will not be detrimental to the best interests of the child. In reaching this conclusion, we adopt the view expressed in *Commonwealth v. Rozanski* (1965), 206 Pa. Super. 397, 402-03, 213 A.2d 155, 157-58, 15 A.L.R.3d 880, 884:

> "To state as a matter of law that the visits of a putative father are always detrimental to the illegitimate child's best interests is to exalt rule over reality. This approach ignores the growing recognition in our courts, and in courts throughout the nation, of the need to determine the welfare of each child in light of his own particular needs and circumstances.
>
> The putative father may, in many instances, instill in the child a sense of stability. He may develop qualities in the child which the mother is uninterested, unwilling or incapable of developing. To the extent that he can perform such a valuable service, his presence becomes exceedingly important. Certainly, to the illegitimate child, the father is never putative.
>
> We recognize that granting visitation privileges to the putative father may not always serve the child's best interests. Visitation rights; however, are always a matter for the supervision of the courts. Should it appear, after visitation privileges have been granted, that the father's presence has an adverse effect on the child's welfare, the right to visit may be withdrawn.
>
> In summary, every case must be decided on the basis of its own particular facts. The unique problems of each child must receive individual attention and consideration. Any attempt by us to determine the best interests of every child by a single rule would be judicially, socially and morally unsound."

One important consideration for the trial court is whether visits by the putative father will have a disruptive influence on the child,

particularly when the mother has married and visitation would interfere with the adjustment of the child to a new family relationship. *Commonwealth v. Spano* (1949), 68 Pa. D. & C. 248.

However, where the needs of the child for a father's affection and guidance are urgent and immediate, and the putative father is the only person available to meet these needs, visitation may be granted subject to such conditions as the court may find necessary to minimize the potential for conflict or disruption. *(Commonwealth v. Rozanski.)* Of particular significance would be the existence of an established family relationship between the father and child, such as where the father had been living with the mother and child, or where the father has previously had custody of the child. *M. v. M.* (1970), 112 N.J. Super. 540, 271 A.2d 919; *Z. v. A.* (1971), 36 App. Div. 2d 995, 320 N.Y.S.2d 997.

■■ In any event, visitation should be allowed only where the father has acknowledged paternity and should be conditioned on his contributing to the support and maintenance of the child. *In re Anonymous* (1958), 12 Misc. 2d 211, 172 N.Y.S.2d 186; *Mixon v. Mize* (Fla. App. 1967), 198 So. 2d 373.

■■ The trial court in the case at bar filed a memorandum opinion, stating public policy reasons for denying visitation rights to putative fathers in general, but making no findings of fact based on the evidence adduced at the hearing. Because of the absence of any finding that, under the facts of this case, visitation by defendant would not be in the best interests and welfare of the child, we must reverse the order of the trial court and remand for the required determination.

It has been 4½ years since the hearing on defendant's petition, and apparently plaintiff is now married. We therefore believe that this case should be remanded for hearing additional evidence as to the present circumstances of the parties and for a determination of whether visits by defendant would be in the present best interests of the child. See *In re Ross* (3d Dist. 1975), 29 Ill. App. 3d 157, 329 N.E.2d 333.

Reversed and remanded.

ALLOY, P. J., concurs.

Mr. JUSTICE BARRY, dissenting:

I do not construe *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208, so broadly as to confer upon the putative biological father who assumes no legal relationship with his child, except some obligation to reimburse the State for partial costs of the child's care, the right to veto the child's adoption by persons to whom the mother gives her consent, or the right of visitation whereby he can intrude upon a family relationship made by the mother's subsequently solemnized union

with another. Neither do I construe it as meaning that the biological father, without giving the child equal parental claims, can have equal rights of custody with the child's unwed mother. A child conceived outside of a legal union that never becomes solemnized, can never in his own right obtain the status of an heir-at-law to his putative father or any lawful status or identification with lineal or collateral members of the father's family. But all these meaningful benefits to the child automatically attend his relationships with his mother, even if she be unwed, and with his legal father, whether he be divorced, separated or widowed, and it specially should be recognized that this case does not involve the rights of a putative father to participate in adoption proceedings nor does it involve the right of a putative father to prosecute custodial rights where the natural mother is deceased.

Neither *Stanley* nor *People ex rel. Slawek v. Covenant Children's Home*, 52 Ill. 2d 20, 284 N.E.2d 291 (1972), preclude circuit courts in hearings on a putative father's petition for visitation from weighing the basis and merits of that father's private claims against the interests of the State and the welfare of the infant. What these cases invalidated was the formerly mandated presumption that public policy considerations always outweighed a putative father's private interests so that no opportunity for a hearing to prove the contrary was even available. In *Stanley*, the biological father lived with his children's mother and jointly shared with her the custodial privileges and responsibilities of their children. At the mother's death, the children were taken from the father by the State Department of Children and Family Services, and the father was accorded no opportunity of a hearing to prove his fitness for continued custody, or that his continued custody would be consistent in that instance with the State's overriding policy of providing for the best interests of his children.

In the case at bar, in the absence of any legislatively mandated public policy on the question of when or under what circumstances a putative father's right of visitation should be honored, the circuit court, using the best interests and welfare of the child as the paramount concern, was left to formulate guidelines of its own. There exists, in my opinion, no reason to be disconcerted by the fact that the circuit court set forth many compelling public policy considerations prompted by specific answers to questions put to defendant, which it weighed against defendant's private claims.

I disagree with the majority that the circuit court erred by failing to base its conclusion on the peculiar evidentiary facts presented by this record. The court found and the record shows that defendant was married to the mother of his two infant children at the time of his relationship with relator. His paternity and claims for visitation here arise

not from any jointly shared custodial relationship, as in *Stanley,* but from a casual adulterous encounter, as the circuit court found. Although he became divorced from his wife after the birth of relator's child, he testified that he had no interest in whether relator would marry another, that he merely wanted visitation rights. His claim for visitation arose as a counterpetition in a proceeding brought by the State to recover partial reimbursement for the infant's support costs. Except for the medical expense, the limit of his support contributions was fixed at $10 per week, and in this minimal obligation he became several times in arrears. An effort had been made to settle relator's paternity claims for $1000. Relator at the time was about 12 years younger, and being 20 years of age, was living with her parents. (The amendment to the caption suggests she has since married.) Her parents objected to defendant's intrusions upon their lives, and defendant was aware of that. Nonetheless, he would on occasion telephone relator at her parent's home at 2 or 3 a.m., and sounding intoxicated, would make demands for visitation.

Weighing this testimony as to the basis and purposes of defendant's privately asserted interests against the guidelines as to public policy it formulated as protective of the child's best interests, the circuit court denied the petition. The court could reasonably infer from the proof that defendant's claims were asserted for purposes of leverage only, to compel relator and the State to drop their support claims or be prepared for his intrusion as a disruptive influence upon their lives and the life of the child.

There is a presumption of validity which attends the order of the circuit court, and in my opinion, defendant has not met his burden of showing error. Clearly defendant was afforded a due process hearing. I find no error and would affirm the judgment of the circuit court.