*In re* ESTATE OF JAMILA BEATRICE BECTON, a Minor (Stanley Becton, Petitioner-Appellant, v. Mamie Sanders, Cross-Petitioner-Appellee).

First District (5th Division)   No. 83—1944

Opinion filed February 1, 1985.

Wendy Meltzer, Marilyn Johnson, and Sharron Pitts, all of Legal Assistance Foundation, of Chicago, for appellant.

Harvey Sussman, of Sussman & Hertzberg, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Appellant, Stanley Becton, the putative father of Jamila Beatrice Becton, and appellee, Mamie Sanders, the child's maternal grandmother, each filed a petition for guardianship of the estate and person of the child born on January 4, 1983. Following denial of appellant's petition, the court granted the grandmother's petition. Further orders awarded care, custody and control of the minor child to the grandmother and T. J. Sanders, the maternal grandfather, and provided limited visitation to the appellant.

Appellant appeals from the orders which denied his petition and awarded both custody and guardianship to the maternal grandmother. Appellant's brief presents three specific issues for our review: (1) whether the appellant's superior right as father was overcome to warrant the award of custody to the maternal grandparents, (2) whether evidence about drug use or possession by him was properly admitted into evidence, and (3) whether permitting limited visitation was an abuse of discretion.

On May 23, 1983, appellant filed his petition requesting appointment as guardian. That petition stated that the child's mother had died and requested that he be named guardian of the estate and of the person of the child. He stated that he was a 32-year-old postal clerk. In an attachment to the petition, he stated that he was the child's father and had lived with the child's mother for six years. Also attached was the child's birth certificate, which listed appellant as the baby's father and "Linda Fay Sanders," 28, as the child's mother. An attached death certificate showed that "Linda Fay Ivy," 28, and "divorced," died as a result of a fall on April 21, 1983; that the fatal accident occurred on a Chicago street on March 24, 1983; and that she had sustained a pulmonary embolism as a result of an ankle fracture.

At the initial hearing, appellant testified that the child was his daughter and that Linda was the child's mother. The two had lived together for six years until her death. At that time, he moved into his parents' first-floor apartment. His two sisters lived together on the second floor of the same building, and an aunt lived in a third-floor apartment. He testified that he was employed as a janitor and that his compensation was set at $550 a month. On cross-examination, it was established that he had worked at the post office until December 1979. Since then, he had been employed six months in 1980 by the Chicago Boys Club and two months in 1981 as a telephone salesperson. He testified that he had only been working at his present position for one week. During these years of intermittent employment, he had received unemployment compensation and general assistance benefits.

Additional testimony was taken at a June 2, 1983, hearing at which the maternal grandparents testified. T. J. Sanders testified that he and Mamie were Linda's parents and had lived in their four-bedroom home for 25 years. Appellant, whom he had known for six years, had not worked for several years, but had received public aid benefits. The child was placed in the grandparents' home about two months before Linda's death because the baby had been born with medical problems. The grandfather stated that appellant first mentioned his interest in guardianship of the child after talking with a lawyer about filing a lawsuit against a hospital and the police department concerning Linda's death.

According to the grandfather, appellant had previously indicated that he wanted them to raise the child because, after Linda's death, appellant had no permanent home. The grandfather testified that he had retired from Inland Steel after 35 years, but still worked as a mechanic and a minister. When examined by the court, he stated that appellant was not fit to be the guardian of the child because of his poor employment record; that "if a man loves his family he will work and take care of them"; that appellant "smokes reefers, and all that dope, and stuff"; and that his presence around the baby at times caused her to have breathing difficulty. He also expressed his fears that if the child grew up inhaling her father's marijuana smoke she might "become a dope addict herself."

Mamie Sanders corroborated her husband's testimony. They first took custody of the child on February 20, 1983, at their daughter's request because the baby had difficulty breathing due to a lung condition. The grandmother attributed the problem to the child's being around smokers. She identified a physician's report which character-

ized the baby as a high-risk infant. She had asked appellant not to smoke around the baby, but he had not acquiesced. She stated that his habit of smoking "reefer cigarettes" was damaging the baby's health and that his smoking was her only objection to his having custody.

Billie Mathews, a friend of Linda, testified that although she had limited contact with the appellant, the few times she was in his presence, "[h]e was always high. He also was under the influence of marijuana."

The appellant was recalled as a witness. He testified that the grandparents took the child about two days before Linda's death. Although the child had been born with fluid on the lungs, she had fully recovered and her physician had given her a "clean bill of health." He denied ever telling the grandparents that he wanted them to raise the child. In fact, he stated that he had gone to their home and demanded the child but the grandparents refused on the grounds that the baby was in poor health. On one occasion, T. J. Sanders had displayed a gun and demanded that he leave. Appellant had offered the Sanders $100 towards the child's expenses, which they refused. While he lived with Linda, he contributed $100 monthly towards her rent payment.

Under examination by the court, appellant testified that he had smoked marijuana on "one occasion," but never smoked marijuana or cigarettes in the grandparents' home because they did not allow it. Linda had asked him not to smoke in her parents' home because of their strong feelings about the matter.

Gloria Becton, appellant's mother, testified that her son was capable of managing his own affairs, holding a job and taking care of the baby. She further testified that his two sisters, ages 25 and 28, who lived in the same building, would also care for the baby.

Linda's landlord testified that although she had never seen appellant smoke marijuana, she had seen "some seeds" and "what they call roaches" in Linda's apartment.

On June 3, 1983, an order was entered which denied appellant's petition for guardianship, awarded custody to the grandparents, and granted appellant visitation twice a month. A judgment order entered June 6, 1983, found that appellant and the grandparents were each fit and proper persons and that it is in the best interest of the child to remain under the care, custody and control of the grandparents. It ordered that the child remain under the care, custody and control of the grandparents, Mamie Sanders and T. J. Sanders; that appellant have the right of visitation twice a month; and further that appellant's petition for guardianship was denied.

Thereafter, on June 7, 1983, the grandmother, Mamie Sanders,

filed an "amended" petition for her appointment as guardian. An order was entered on that date appointing her guardian of the estate and person of the child and approving bond of the guardian.

Subsequently, on June 14, 1983, appellant appeared with new attorneys and made application to sue or defend as a poor person. The application set forth that he was employed as a janitor by Claretha Brown and John Becton at $350 per month and had an income for the preceding year of $1,728. The application was granted and an order entered providing that the circuit court be responsible for fees for a transcript of the hearing held on May 23, June 2, and June 3, 1983.

Appellant on July 5, 1983, filed a motion to vacate judgment and for additional relief. His motion that the orders of June 2, June 6, and June 7, 1983, be vacated, for a new trial and appointment of a *guardian ad litem* of the child therein, for joint custody, and for more liberal visitation was denied. However, the order provided that appellant be permitted to visit with the child one day every other weekend for four hours at a time in the home of the grandparents and that the grandparents are not to be present during the visit. Upon appellant's motion to clarify or amend the foregoing visitation, an order was entered July 28, 1983, denying his request that no member of the Sanders family be present in the home during his visits. It granted his request that the grandparents not be present in the room, further providing that appellant's visits are to occur on alternating Saturdays and Sundays between 12 noon and 4 p.m. Appellant filed a notice of appeal on August 8, 1983.

Opinion

Appellant initially contends that his superior right to custody of his daughter was not overcome by any good cause or reason to require award of custody to the grandmother. The grandmother argues that the court, while recognizing the putative father's presumptive right to custody, was primarily guided by the best interests of the child and that the evidence rebutted the presumptive right.

■ Illinois courts have acknowledged the right and correlative responsibility of a parent to care for his or her child as being a basic human right, fundamental and as ancient as mankind. (*In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231.) This right is expressed by the Illinois General Assembly in section 11—7 of the Probate Act, which provides:

> "Sec. 11—7. Parental right to custody. If both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the

person of the minor and the direction of his education. If one parent is dead and the surviving parent is competent to transact his own business and is a fit person, he is similarly entitled. The parents have equal powers, rights and duties concerning the minor. If the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person." (Ill. Rev. Stat. 1983, ch. 110½, par. 11—7.)

*In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231, is the leading case involving a custody dispute between a natural parent and a third party. In *Townsend* the court emphasized that the parent's interest in the care, custody and control of the child may not be ignored or facilely swept away in the face of a competing third-party custody petition. The court stated:

"In child-custody disputes it is an accepted presumption that the right or interest of a natural parent in the care, custody and control of a child is superior to the claim of a third person. The presumption is not absolute and serves only as one of several factors used by courts in resolving the ultimately controlling question of where the best interests of the child lie. [Citations.] A court need not find that the natural parent is unfit or has forfeited his custodial rights before awarding custody to another person if the best interests of the child will be served. [Citations.] This standard or 'guiding star' (*Nye v. Nye* (1952), 411 Ill. 408, 415[, 105 N.E.2d 300]) is a simple one designed to accommodate the often complex and unique circumstance of a particular case." (86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234.)

The burden is on the third party, in this case the grandparents, to "establish good cause or reason to overcome the presumption that *** the natural father *** had the first and superior right to the custody of his daughter." (86 Ill. 2d 502, 515, 427 N.E.2d 1231, 1238.) In other words, the presumption in favor of awarding custody to a natural parent is rebuttable and may be overcome by a demonstration of good cause or reason for a nonparent to be awarded custody.

Our review of the trial court's decision must be guided by the fact that the trial judge was in the best position to observe the parties and their demeanor while testifying. Such findings should not be disturbed unless they are patently against the manifest weight of the evidence. *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613; *In re Custody of Piccirilli* (1980), 88 Ill. App. 3d 621, 410 N.E.2d 1086.

As *Townsend* indicates, the superior rights doctrine is subser-

vient to the best interests of the child. Here, the trial court stated that it felt unjustified in awarding custody to the natural parent because of the length of time in which the grandparents cared for the child. It must be noted, however, that the time which a court should consider in determining whether a substantial period has elapsed ends with the filing of a petition for custody. (See *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231.) The time in the instant case during which the grandparents cared for the child was even more brief than the six months found insufficient in *Townsend*. (*Cf. In re Custody of Henkins* (1983), 117 Ill. App. 3d 666, 453 N.E.2d 78 (custody in grandparents for six years); *Look v. Look* (1974), 21 Ill. App. 3d 454, 315 N.E.2d 623 (custody in grandparents for five years); *Mackie v. Mackie* (1967), 88 Ill. App. 2d 61, 232 N.E.2d 184 (custody in grandmother for five years).) Accordingly, the few months during which the grandparents cared for the child are insufficient, when standing alone, to rebut the presumption in favor of the natural parent.

■ This conclusion does not dispose of the larger question of whether the evidence supports a finding that an award of custody to the grandparents is in the child's best interests. This court must view the evidence introduced at trial and the inference drawn therefrom in the light most favorable to the party prevailing below. (*Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47.) Applying this rule, we cannot conclude that the trial court's decision was against the manifest weight of the evidence. The grandfather testified that appellant requested that he and his wife care for the child because appellant had no permanent home. In sharp contrast, the grandparents' home environment offers substantial stability. (See generally *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613.) The grandfather further testified that appellant had shown no interest in custody of the child until after talking with an attorney about filing a lawsuit pertaining to Linda's death. Moreover, appellant admitted that he had paid nothing towards the child's support, although citing one occasion when he offered the grandparents $100, which they refused. Testimony was also adduced that appellant had not contributed towards the child's medical care.

■ While mere financial disparity is insufficient to deprive a natural parent of the custody of his or her child, the right of a parent to care for his child is associated with concomitant responsibilities. (*In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231.) When a parent's actions show that he or she has, for all practical purposes, abandoned a child, the courts have not hesitated to find that place-

ment with others would be in the best interests of the child, even absent a showing that the natural parent is unfit. *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613.

Although a trial court's findings are always subject to review, such findings should not be disturbed unless the trial court's holding is against the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) In *Schulenburg*, the Illinois Supreme Court explained this rule, stating:

"Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence ***. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion." (37 Ill. 2d 352, 356, 226 N.E.2d 624, 626.)

Mindful of these precepts, we conclude that the trial court's finding of the best interests of the child was not against the manifest weight of the evidence. Our review of the record shows that evidence exists which supports the trial court's order awarding custody to the grandmother. See *Gibson v. State Farm Mutual Automobile Insurance Co.* (1984), 125 Ill. App. 3d 142, 465 N.E.2d 689.

■ Appellant next contends that the trial court committed reversible error in admitting testimony of his alleged use and possession of marijuana to overcome the presumption that the best interests of the child required the award of custody to her father. Mamie Sanders, the maternal grandmother, responds that petitioner's prior counsel did not object to the evidence and therefore any error as to its admission has been waived. However, although the failure to object ordinarily constitutes a waiver of any error on appeal, such technicality cannot prevail where the court is here confronted with protecting the rights of a minor. (*Fears v. Fears* (1972), 5 Ill. App. 3d 610, 283 N.E.2d 709.) In such circumstances, we have a duty to see that the rights of the infant are adequately protected and are bound to notice substantial irregularities, even though objections are not properly preserved in the trial court. *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 555, 170 N.E.2d 564.

It is well established that the extent of a parent's use of marijuana and that parent's resulting conduct and physical condition are relevant upon the issue of custody, but only if that parent's use of the substance can be shown to affect that parent's mental or physical health and that parent's relationship with the child. (*In re Marriage*

*of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555.) Furthermore, such testimony requires a proper foundation (*Johnson v. Tipton* (1982), 103 Ill. App. 3d 291, 431 N.E.2d 464), and must be based on personal knowledge and not be merely speculative or conclusory. *Gerler v. Cooley* (1963), 41 Ill. App. 2d 233, 190 N.E.2d 488.

Several witnesses testified about appellant's alleged use and possession of marijuana. Under examination by the court, appellant admitted he had smoked marijuana on "one occasion" but denied he ever smoked marijuana or cigarettes in the grandparents' home because of their strong feeling about the matter. The grandfather, T. J. Sanders, testified that appellant was not fit to be guardian because of his poor employment record and that he "smokes reefers, and all that dope and stuff" and his presence caused the baby to have difficulty breathing. Mamie Sanders, the grandmother, stated that appellant did not acquiesce in her request that he not smoke around the baby and that his habit of smoking "reefer cigarettes" was damaging the baby's health. Billie Mathews, Linda's best friend, testified that in the about three times she was in the appellant's presence, "[h]e was always high. He also was under the influence of marijuana." Linda's landlord stated she had never seen appellant smoke but had seen "some seeds" and "what they call roaches" in Linda's apartment.

■ Appellant admitted that he had on one occasion smoked marijuana and denied ever smoking in the presence of the child. However, there was no evidence to indicate appellant's addiction or regular use of marijuana or other drugs. Neither was there any evidence to establish when the alleged smoking took place, nor whether it took place before or after birth of the child. Likewise, there was no evidence or explanation as to the ability or manner in which the other witnesses were able to identify the alleged "reefer cigarettes" and "roaches" as in fact being marijuana or other prohibited substances. Furthermore, there was no showing that such alleged use affected appellant's mental or physical health or in any way affected, or would affect, his future relationship with the child. In sum, the testimony as to marijuana and to its relevance upon appellant's relationship with the child was without proper foundation, and at most, speculative and conclusory. As such, the testimony was improper and subject to being excluded upon the assertion of timely objections.

■ Although we find the testimony as to appellant's alleged use and possession of marijuana to have been improperly received, reversal of the orders as to custody and guardianship is not required. In the absence of contrary indications, a trial judge sitting without a jury is presumed to have considered only competent evidence in reaching

his decision. (*Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 450 N.E.2d 879.) In fact, the court in the instant case entered an order finding appellant a fit and proper person to have the care, custody and control of the child, and by further orders determined appellant was to be granted visitation rights. These findings demonstrate that the trial court did not rely on the testimony here challenged in awarding custody and in appointing the guardian herein. The paramount concern in each instance is the best interests and well-being of the minor child. On this record, we find no abuse of discretion in the selection of the grandmother to be the custodian and guardian for the child herein. Accordingly, the improper evidence presented does not require reversal of the orders awarding custody and appointing the guardian.

■ Appellant finally contends that the trial court abused its discretion in allowing him only very limited visitation with his child, and then only in the home of the maternal grandparents. He argues that the restrictions are manifestly unfair and should be relaxed. The visitation order ultimately provided for visitation in the home of the grandparents on alternating Saturdays and Sundays between 12 noon and 4 p.m. and that the grandparents not be present in the room during visitation. The appellee grandmother in her brief and at oral argument agreed that the visitation should be expanded, especially as the child grows older. We concur.

The court herein upon appointment of the guardian obtained continuing control over the person and estate of Jamila, the minor ward, and the guardian's custody remains under the court's control and direction. (Ill. Rev. Stat. 1983, ch. 1110½, par. 11—13.) Since the father of a child born out of wedlock is no longer barred from obtaining custody, courts now consider the familiar "best interests of the child" standard and recognize his visitation rights upon a showing that his visits will not be detrimental to the best interests of the child. (*People ex rel. Vallera v. Rivera* (1976), 39 Ill. App. 3d 775, 777, 351 N.E.2d 391, 393.) The sole responsibility of the trial court is to provide for the best interests and welfare of the minor ward; the minor child must be protected first, the feelings and desires of the adult parties are inferior thereto. *In re Estate of Stark* (1975), 33 Ill. App. 3d 626, 629, 342 N.E.2d 234, 236.

The standard for judicial review of visitation orders, normally within the broad discretion of the trial court, is whether a manifest injustice has been done. (*Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347.) The welfare of the child usually requires that the noncustodial parent be given liberal visitation rights so that the child will

not be estranged from that parent. (*McManus v. McManus* (1976), 38 Ill. App. 3d 645, 647, 348 N.E.2d 507, 509.) Moreover, fairness and good conscience require that a noncustodial parent who is found fit and proper to have custody be granted visitation which does not require him to stay in the home of the custodian whether or not the latter is present. (See *Patton v. Armstrong* (1972), 6 Ill. App. 3d 998, 1002, 286 N.E.2d 351, 354.) The restrictions imposed on the visitation rights granted to appellant are not supported by the record herein and are manifestly unjust and not necessary.

The trial court expressly found that appellant and the grandparents were each fit and proper persons to have custody of the minor child herein. Consistent with the principle that the welfare of the child is the paramount consideration in determining visitation by a noncustodial parent, orders allowing visitation by a parent are favored to foster and maintain a familial relationship. There is the ever-present possibility that a parent out of custody may at some time in the future be charged with or acquire that responsibility. The restrictions imposed were not shown to be necessary for the child's physical, mental, moral or emotional health (see Ill. Rev. Stat. 1983, ch. 40, par. 607(a)) or otherwise required in the best interests of the child. Modification of the terms and conditions of visitation consistent with the foregoing are directed to be entered upon agreement of the adult parties or, if the parties do not agree, to be set by the trial court on remand. Of course, it is to be noted that if in practice the visitation privilege is abused, the orders pertaining thereto remain subject to further modification. 16A Ill. L. & Prac. *Divorce* sec. 233 (1971).

For the reasons stated, the orders of the trial court appointing guardian and awarding custody are affirmed; the orders as to visitation are vacated and the cause remanded to the trial court with directions to modify the same as hereinbefore set forth.

Affirmed in part; vacated in part and remanded with directions.

SULLIVAN and O'CONNOR, JJ., concur.