CLEMENT PRITZ, JR., Plaintiff-Appellant, *v.* ELIZABETH BONNIE CHESNUL *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 80-1805

Opinion filed May 19, 1982.

Frank T. Steponate and Thomas G. Merkel, both of Friend and Steponate and Associates, Ltd., of Chicago, for appellant.

Barbara B. Hirsch, of Chicago (Margaret C. Benson, of counsel), for appellees.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Clement Pritz, Jr., appeals from an order of the circuit court of Cook County which dismissed his verified "Complaint for Declaratory Judgment to Establish Paternity of Child and Right of Visitation." The complaint names Elizabeth Bonnie Chesnul and Ericka Christine Pritz Chesnul as defendants and contains the following allegations: that plaintiff is the natural father of Ericka who was born on May 27, 1977; that the child's birth certificate bears the name of Ericka Christine Pritz Chesnul; that plaintiff and defendant Elizabeth dated exclusively from approximately January 1976 to May 1977; that after the child was born, plaintiff voluntarily contributed substantially to the support and maintenance of the child and that he continues to do so; that plaintiff and defendant Elizabeth were never lawfully married; that plaintiff has been allowed to visit with the child on a continuing basis; and that the plaintiff on many occasions has been permitted to spend an entire weekend with the child. In his prayer for relief, plaintiff sought a judgment declaring that he is the natural father of Ericka and establishing his support obligation and visitation rights. He also prayed that the court consider awarding care, custody and control of Ericka to him. Significantly, the complaint does not purport to be based on the Paternity Act (Ill. Rev. Stat. 1977, ch. 40, pars. 1351 et seq.).

Defendant responded to the complaint by filing a motion to dismiss on the grounds that the complaint failed to state a cause of action. The trial judge sustained the motion to dismiss the complaint because the Illinois Paternity Act does not provide for the putative father to bring this cause of action.

The questions presented on appeal are whether section four of the Paternity Act bars actions by putative fathers to establish paternity, and does it thereby deprive them of the equal protection of the laws

guaranteed by the fourteenth amendment of the United States Constitution. We do not reach the latter question because we conclude that the Paternity Act should not be construed to bar a declaratory judgment action by a putative father to establish his parentage and parental rights.

A preliminary issue is raised with regard to an order entered by this court in this case. Two days subsequent to oral argument, we entered an order allowing the parties time in which to file additional briefs on the issue of whether plaintiff's complaint stated a cause of action other than under the Paternity Act. Defendants argue that the plaintiff raised no issues other than the constitutionality of section 4 of the Paternity Act in his original brief, and that this court erred in disregarding plaintiff's waiver of any issues other than the constitutionality of that section. Initially, we note that we requested additional briefs because there would be no equal protection problem if an unwed father was able to maintain this declaratory judgment action other than under the Paternity Act.

■■ Defendants correctly argue that the failure to argue a point in one's brief is generally a waiver of the point on review. (73 Ill. 2d R. 341(e)(7); *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664.) However, the waiver rule as expressed in Supreme Court Rule 341(e)(7) states an admonition to the parties and is not a limitation upon the jurisdiction of a reviewing court. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 224, 230 N.E.2d 831.) The *Hux* court stated that the supreme court rules "recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system," subject to the limitation that an appellate court will not " 'consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial.' " (38 Ill. 2d 223, 225.) This limitation is not applicable here. We elect to consider the issue of whether a cause of action was stated other than under the Paternity Act.

The United States Supreme Court has recognized that a natural father, absent a finding that he is unfit, has a due process right to maintain a parental relationship with his children. (*Quilloin v. Walcott* (1978), 434 U.S. 246, 54 L. Ed. 2d 511, 98 S. Ct. 549; *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208; *R. McG. v. J. W.* (Colo. 1980), 615 P.2d 666, 673 (Dubofsky, J., specially concurring).) In *Stanley*, an unwed father attacked an Illinois statutory scheme under which the children of unwed fathers became wards of the State upon the death of the mother. The court stated that Stanley's interest, as an unwed father, in retaining custody of children he has sired and raised is cognizable and substantial and warrants deference (405 U.S. 645, 652, 31 L. Ed. 2d 551, 559, 92 S. Ct.

1208, 1213), and that the integrity of the family unit, including family relationships unlegitimized by a marriage ceremony, finds protection in the due process clause (405 U.S. 645, 651, 31 L. Ed. 2d 551, 559, 92 S. Ct. 1208, 1213). In short, the relationship between parent and child is constitutionally protected. (*Quilloin v. Walcott* (1978), 434 U.S. 246, 255, 54 L. Ed. 2d 511, 519, 98 S. Ct. 549, 554.) Our supreme court, relying on *Stanley*, has stated that "the interests of the father of an illegitimate child are no different from those of other parents." *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 22, 284 N.E.2d 291.

*Stanley* has been interpreted to recognize a right in the putative father to establish that he is the natural parent of a child. In *Slawek v. Stroh* (1974), 62 Wis. 2d 295, 303, 215 N.W.2d 9, 14, the court stated that, "*Stanley v. Illinois * * ***, in effect, recognized that fathers, including putative fathers, do have the right to establish they are a natural parent and, as such, have some parental rights and duties." The court concluded:

"[T]he plaintiff-appellant, as a putative father of an illegitimate child, does have the constitutional right to establish, if he can, his natural parentage, to assert parental rights, and a legal forum with due process procedures to establish these rights." (62 Wis. 2d 295, 304, 215 N.W.2d 9, 15.)

*Stroh* is instructive here because the fact situation in that case is very similar to the facts of the instant case. In *Stroh*, the putative father commenced an action for a judicial declaration that he was the father of an illegitimate child. Like Illinois, Wisconsin's statutory procedure for establishing the parentage of illegitimate children (at least at the time of the opinion in *Stroh*) did not contemplate nor provide procedures for the commencement of a paternity action by the putative father.

■■ We find the reasoning of *Stroh* persuasive, and we conclude that the plaintiff, as the putative father of an illegitimate child, had the constitutional right to a legal forum with due process procedures to establish his natural parentage and his parental rights.

Our conclusion that the Paternity Act should not be construed to bar this declaratory judgment action is supported by Illinois case law. In *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 427 N.E.2d 974, the plaintiff filed an action seeking a declaration that he was the father of a child born to a woman married to another man at the time of the child's birth. In addressing an argument that the Paternity Act denies equal protection of the laws to males because it does not provide a way for them to establish their paternity, the court stated: "[A] father has not been barred by the Act from having his paternity established when he has overcome the presumption of legitimacy." (101 Ill. App. 3d 107, 115.) Later, in the same opinion, the court stated: "* * * the Paternity Act was

not a bar to a putative father asserting his claim of paternity." (101 Ill. App. 3d 107, 116-17.) Other Illinois cases have allowed unwed fathers to establish their paternity. In *Mitchell v. Henderson* (1978), 65 Ill. App. 3d 363, 382 N.E.2d 650, the plaintiff filed a *habeas corpus* proceeding alleging that he was the father of a minor child and that it would be in the child's best interest that he be granted custody. The appellate court held that the trial court's finding that the plaintiff failed to prove paternity was not against the manifest weight of the evidence. In *In re Ozment* (1978), 61 Ill. App. 3d 1044, 378 N.E.2d 409, the Department of Children and Family Services filed a dependency petition in the interest of a minor, and one Heater filed a cross-petition alleging he was the father of the minor born during the marriage of the mother to a third person. The appellate court held, in part, that the trial court could reasonably believe that Heater was the natural father of the child. Furthermore, Illinois cases have recognized the rights of a biological father to seek custody of his illegitimate child. *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 284 N.E.2d 291; *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 115; *In re Custody of Myer* (1981), 100 Ill. App. 3d 27, 32, 426 N.E.2d 333 (also holding that *habeas corpus* is no longer a proper vehicle to enforce the rights of a putative father who acknowledges an illegitimate child and that the language of sections 601 and 603 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 601, 603) is sufficiently broad to encompass a custody proceeding *dehors* a marriage relationship); *People ex rel. Elmore v. Elmore* (1977), 46 Ill. App. 3d 504, 506, 361 N.E.2d 615 ("In the absence of legislation establishing a procedure for resolving a dispute over custody of a child between parents who never have been married, society requires that the law shape an appropriate forum.").

■█ ■ Defendants, nevertheless, argue that the plain language of the Paternity Act prevents the plaintiff from maintaining this action. Section four of that act provides, in pertinent part, as follows:

> "§4. A proceeding to establish the paternity of a child born out of wedlock and to establish and enforce liability for its support, maintenance, education and welfare shall be instituted in the circuit court. Such action may be instituted only on the filing of a complaint in writing (a) by the mother of a child born out of wedlock, (b) by a woman who is pregnant with child, which, if born alive, may be born out of wedlock, or (c) by the Illinois Department of Public Aid in behalf of a minor child who is receiving financial aid under 'The Illinois Public Aid Code', approved April 11, 1967, as amended. * * *" (Ill. Rev. Stat. 1977, ch. 40, par. 1354.)

They rely upon *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194, 381 N.E.2d 222, which stated: "There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." We find the words of section 4 of the Paternity Act plain, but their reach and the limits of their application are not defined. Should section 4 be construed as setting forth procedures and requirements for the institution of actions under the Paternity Act or should it be construed as broadly fixing the rights of action, whether under the Paternity Act or not, of all persons in reference to children born out of wedlock? If it does the latter, as appellees contend, thus barring the instant action because it is brought by a putative father, constitutional problems abound. (*Stanley v. Illinois; People ex rel. Slawek v. Covenant Children's Home.*) Where a statute is subject to two constructions, one of which may render it unconstitutional, courts are bound to adopt the construction which avoids the constitutional problem. (*McAleer Buick-Pontiac Co. v. General Motors Corp.* (1981), 95 Ill. App. 3d 111, 114, 419 N.E.2d 608; *Grove v. Board of Supervisors* (1927), 246 Ill. App. 241, 245.) Accordingly, we adopt the narrower construction of section 4.

Moreover, if the statute is construed to prohibit an action by unwed fathers, then the statutory scheme would treat unmarried parents differently according to their sex. The United States Supreme Court has said that for gender-based classifications to withstand constitutional challenge under the equal protection clause, they "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren* (1976), 429 U.S. 190, 197, 50 L. Ed. 2d 397, 407, 97 S. Ct. 451, 457; see *Caban v. Mohammed* (1979), 441 U.S. 380, 391, 60 L. Ed. 2d 297, 306, 99 S. Ct. 1760, 1767.

The purpose of a statutory paternity proceeding is "to convert a father's moral obligation to support his illegitimate children into a legal obligation." (*Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 90, 344 N.E.2d 447; *People ex rel. Cizek v. Azzarello* (1980), 81 Ill. App. 3d 1102, 1105, 401 N.E.2d 1177.) It is hard to imagine how this purpose would be served by creating a gender-based classification. Rather, it would seem logical that this purpose would be more effectively promoted by allowing both unwed mothers and unwed fathers to maintain actions to establish paternity. We need not resolve this constitutional issue, however, because we are of the opinion that section 4 of the Paternity Act should be construed as relating only to actions instituted under that act and therefore constitutes no bar to the present suit.

The parties do not argue whether a declaratory judgment is an appropriate method for determining parentage and parental rights. We believe that it is for the reasons stated by the Wisconsin Supreme Court in

*Slawek v. Stroh* (1974), 62 Wis. 2d 295, 305-08, 215 N.W.2d 9, 15-16; see Ill. Rev. Stat. 1979, ch. 110, par. 57.1.

For the reasons stated above, we conclude that the order dismissing the plaintiff's complaint must be reversed and the cause remanded to the circuit court for proceedings consistent with the views expressed herein.

Reversed and remanded.

McGILLICUDDY and RIZZI, JJ., concur.