MEYERSON, Presiding Judge,
specially concurring:
I agree with the majority’s conclusion that under Sheldrick a putative father may not bring an action to establish his paternity. Although constitutional arguments were not raised in Sheldrick, Traphagan, or in this case, it is the constitutional implications of these decisions which prompt me to write this special concurring opinion. For the reasons stated below, I believe that a statute which precludes a father from establishing his paternity violates the due process and equal protection clauses of the fourteenth amendment.
In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the United States Supreme Court recognized that a parent’s interest in his illegitimate children is both cognizable and substantial. 405 U.S. at 652, 92 S.Ct. at 1213. It stated:
The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one’s children have been deemed “essential,” “basic civil rights of man,” and “[rjights far more precious ... than property rights.” “It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.” The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.
Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony____ “To say *144 that the test of equal protection should be the ‘legal’ rather than the biological relationship is to avoid the issue. For the Equal Protection Clause necessarily limits the authority of a State to draw such ‘legal’ lines as it chooses.”
405 U.S. at 651-652, 92 S.Ct. at 1212-1213 (citations omitted). See also Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). A statutory scheme which allows only mothers to establish a child’s paternity or only fathers to establish a child’s maternity, in my view, infringes upon the excluded parent’s due process rights of parentage and rights of equal protection under the law.
Other jurisdictions have examined this problem and have reached this conclusion. Some courts have analyzed it under due process guarantees, others under equal protection. In Slawek v. Stroh, 62 Wis.2d 295, 215 N.W.2d 9 (1974), the Supreme Court of Wisconsin relied on Stanley v. Illinois to conclude that “a putative father of an illegitimate child, does have the constitutional right to establish, if he can, his natural parentage, to assert parental rights, and a legal forum with due process procedures to establish these rights.” Id. at 304, 215 N.W.2d at 15. The Slawek court recognized that the Wisconsin paternity statute did not allow the alleged father to bring an action to establish his parentage but believed some forum must be provided to litigate these constitutional rights. Accordingly, the court construed Wisconsin’s Declaratory Judgments Act to authorize such a proceeding.
An Illinois appellate court offered a different solution to the problem in Fritz v. Chesnul, 106 Ill.App.3d 969, 62 Ill.Dec. 605, 436 N.E.2d 631 (1982). The court first concluded that “the plaintiff, as the putative father of an illegitimate child, had the constitutional right to a legal forum with due process procedures to establish his natural parentage and his parental rights.” Id. at 972, 436 N.E.2d at 634. While conceding that the Illinois paternity statute did not facially allow the father to bring such an action, the court chose to interpret the statute to permit unwed fathers to maintain paternity actions.
Paternity statutes which preclude the alleged father from affirmatively establishing his parentage have also been successfully challenged under the equal protection clauses of state and federal constitutions. In R. McG. v. J.W., 200 Colo. 345, 615 P.2d 666 (1980), the Colorado Supreme Court examined a statutory scheme which denied a putative father standing to - assert his paternity of an illegitimate child born to a married woman. The same statute, however, granted the married woman the right to instigate paternity proceedings against the unwed father. The court found the statute created a gender-based distinction that was not substantially related to the achievement of important governmental objectives. It stated:
This statutory scheme creates more than a difference in treatment of natural mothers and fathers____ It establishes contrary treatment. [This] statutory classification and corresponding difference in treatment ... fail to pass constitutional muster under equal protection doctrine. [It] exemplifies a gender-based classification predicated on an overbroad generalization that a mother has a legitimate interest in establishing a determination of paternity in a non-spousal father, while such father has no interest in establishing a determination of paternity in himself.
Id. at —, 615 P.2d at 671; see Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979). Likewise, the Illinois appellate court in Fritz v. Chesnul emphasized equal protection considerations in its refusal to construe the Illinois paternity statute as precluding an action by a putative father. 106 Ill.App.3d at 974, 62 Ill. Dec. at 609, 436 N.E.2d at 635. See also La Croix v. Deyo, 113 Misc.2d 89, 447 N.Y.S.2d 864 (Fam.Ct.1981); contra, see A v. X, Y, and Z, 641 P.2d 1222 (Wyo.1982).
*145 The constitutional necessity to provide the putative father with a forum to assert a parental relationship with his child born out of wedlock has been made more compelling by the decision of the United States Supreme Court in Lehr v. Robertson, — U.S. -, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). In Lehr, the Court held that an unmarried putative father had no constitutional right to notice and opportunity to be heard before his child was adopted. The Court reasoned that absent any commitment to the responsibilities of parenthood, the mere inchoate relationship with the child was insufficient to invoke due process guarantees. Thus, it is particularly important that Arizona’s paternity statute be interpreted in such a way as to provide the putative father with a means of establishing paternity.
Because of my concerns with the constitutional implications of our decision to vacate the judgment of the trial court, I believe it appropriate to address certain issues raised by Sullivan in her brief. In essence, Sullivan claims there was insufficient evidence to support the trial court’s determination that Allen was the father of her daughter. I agree.
In Arizona a paternity action is a civil proceeding. A.R.S. § 12-841. A complaint must establish parentage by a preponderance of the evidence. Skaggs v. State, 24 Ariz. 191, 201, 207 P. 877, 880 (1922). In this case, however, the only substantive evidence presented by Allen was his testimony that he had sexual relations with Sullivan during the period when he believed conception occurred. But Allen’s testimony is at best vague, incomplete, and contradictory. Allen presented no medical evidence relating to the time of conception. Nor did Allen produce any blood tests or other scientific evidence to establish his paternity. Sullivan, on the other hand, steadfastly denied that she maintained a sexual relationship with Allen during the time conception was possible. She identified another man as the father of her daughter. She produced medical evidence to establish a conception date. She gave consistent and coherent testimony regarding the dates and details of her relationship with Allen, with the individual she claimed is the natural father of her child, and of her living situation during the time in question. Critical portions of Sullivan’s testimony were corroborated by another witness. I am unable to see how the evidence and testimony presented at trial could substantiate a finding that Allen is the natural father of Sullivan’s daughter.
Determinations of paternity or maternity are too important to be based solely upon such insubstantial and speculative testimony. Too many critical interests are at stake. The mother and father have constitutionally protected rights to conceive and raise their children. Certainly the child has a substantial interest in determinations of parentage.* And the state has an interest not only in promoting harmonious family relationships, but in insuring that such children are adequately supported by their parents rather than becoming wards of the state.
The lack of evidence presented in this case is particularly disturbing considering the present availability of sophisticated blood testing and other procedures. Such testing can be an invaluable aid in excluding or identifying a child’s natural parents. See, e.g., 1 S. Schatkin, Disputed Paternity Proceedings §§ 5.01-11.06 (rev. ed. 1983); H. Krause, Illegitimacy: Law and Social Policy 123-48 (1971). Further, the use of blood tests in disputed paternity proceedings is required by A.R.S. § 12-847.C. which states:
The court, on its own motion, or on motion of any party to the proceedings, shall order the mother, her child or children and the alleged father to submit to *146 one or more blood grouping tests conducted by a duly qualified physician or laboratory. The results of the tests shall be received in evidence if requested by any party to the proceedings.
In the present case, no blood tests were apparently performed. The parties did not request nor did the court order such testing. Furthermore, when Sullivan tried to introduce testimony regarding her attempts to obtain blood tests, the judge apparently sustained Allen’s objection to its relevancy. Under A.R.S. § 12-847.C., I believe the trial court had a duty to order that blood tests be taken.

 Paternity determinations necessarily affect, among other things, a child’s inheritance rights, eligibility for dependent social security benefits, and standing to assert certain legal actions such as wrongful death.