MICHAEL LeHEW, Petitioner-Appellant, v. ERIN MELLYN, a/k/a Erin Barnett, *et al.*, Respondents-Appellees (Bruce Barnett, Defendant-Appellee).

First District (2nd Division)   No. 83—3007

Opinion filed January 16, 1985.—Rehearing denied February 11, 1985.

Leroy E. Stevens, Jr., of Chicago, for appellant.

Walter Soroka, of Chicago, for appellees.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This action was initiated by the filing of a petition for visitation with minor child by petitioner Michael LeHew, who claims to be the father of Andrea Mellyn. Andrea was born on December 21, 1981, to respondent Erin Mellyn, who was unmarried at the time of the birth; Erin Mellyn is now married to defendant Bruce Barnett. Petitioner's pleading was amended several times, resulting in the stated cause of action being asserted in the second amended petition to determine paternity and for visitation with minor child. The trial judge granted respondent's motion to strike and dismiss the petition, and petitioner appeals.

Andrea Mellyn was born out of wedlock to Erin Mellyn on December 21, 1981. Prior to the birth of the child, Erin had been involved in relationships with petitioner Michael LeHew and with respondent Bruce Barnett. Erin was married in 1982 to Bruce Barnett, who claimed to be Andrea's father. On May 10, 1982, petitioner instituted this action, claiming to be the father of Andrea and seeking to assert parental rights and responsibilities. Specifically, petitioner sought visitation rights and a determination of his responsibilities in supporting Andrea.

Petitioner filed a motion for discovery on April 27, 1983, to compel all the parties to submit to blood tests. On November 14, 1983, the trial court granted respondent's motion to dismiss the petition without ruling on petitioner's discovery motion.

On appeal, petitioner contends that the trial court erroneously dismissed his petition to determine paternity and for visitation. Petitioner argues that he should not be barred from asserting parental rights as to Andrea.

■ The United States Supreme Court has established that a natural father, absent a finding that he is unfit, has a due process right to maintain a parental relationship with his children. (*Quilloin v. Walcott* (1978), 434 U.S. 246, 255, 54 L. Ed. 2d 511, 519-20, 98 S. Ct. 549, 554-55; *Stanley v. Illinois* (1972), 405 U.S. 645, 649, 31 L. Ed. 2d 551, 557, 92 S. Ct. 1208, 1211-12.) This right has been recognized by the Illinois courts. (*People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 284 N.E.2d 291; *Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 436 N.E.2d 631.) In *Covenant Children's Home*, our supreme court observed that "[t]he interests of the father of an illegitimate child are no different from those of other parents." *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 22.

■ In *People ex rel. Vallera v. Rivera* (1976), 39 Ill. App. 3d 775,

351 N.E.2d 391, this court stated:

> "We believe the public policy of Illinois, as indicated by the Supreme Court and the legislature, requires recognition of the right of a putative father to visit his child upon a showing that his visits will not be detrimental to the best interests of the child." (39 Ill. App. 3d 775, 777.)

In *Rivera*, the identity of the biological father was known. In the instant case, however, no finding has been made as to the identity of the child's natural father. We believe that such a determination should be made at the outset of the proceedings in this case. The child's interests will undoubtedly be furthered by the knowledge of the identity of her biological father, if for no other reason than the avoidance of future inheritance disputes. In addition, a determination that petitioner is not the child's natural father would precipitate the termination of this litigation. We note that section 7 of the Parentage Act of 1984 (1984 Ill. Legis. Serv. Pub. Act 83—1372, effective July 1, 1985), although inapplicable to the case at bar, evidences an intent on the part of the General Assembly to permit a man "alleging himself to be the father" of a child to bring an action for determination of the existence of a father-and-child relationship.

█ If petitioner is found to be the child's biological father, he will be entitled to visitation rights if the court determines that visitation is in the best interests of the child. This determination should be made in accordance with the guidelines set forth by this court in *Rivera*, in which it was held that what is in the best interests of the child must be determined by analyzing the particular facts of each case:

> "One important consideration for the trial court is whether visits by the putative father will have a disruptive influence on the child, particularly when the mother has married and visitation would interfere with the adjustment of the child to a new family relationship. [Citation.]

> However, where the needs of the child for a father's affection and guidance are urgent and immediate, and the putative father is the only person available to meet these needs, visitation may be granted subject to such conditions as the court may find necessary to minimize the potential for conflict or disruption. [Citation.] Of particular significance would be the existence of an established family relationship between the father and child, such as where the father had been living with the mother and child, or where the father has previously had custody of the child. [Citations.]" (39 Ill. App. 3d 775, 777-78.)

The court in *Rivera* also stated that visitation should be conditioned

upon the father's contributing to the support and maintenance of the child. 39 Ill. App. 3d 775, 778.

The order of the trial court is reversed and the cause is remanded, initially for pleadings and proof on the issue of the identity of the child's biological father, and then, if petitioner is found to be the father, for a hearing on the issue of whether visitation by petitioner is in the best interests of the child. The court is also directed to order the appointment of a guardian *ad litem* to represent the child's interests in these proceedings.

Reversed and remanded with directions to proceed not inconsistent with this opinion.

PERLIN and HARTMAN, JJ., concur.