134 Ill. App.3d 455 (1985)
480 N.E.2d 1283
In re PETITION OF PETER THOMAS SULLIVAN III (Peter Thomas Sullivan III, Plaintiff-Appellee,
v.
Roberta Sue McGaw, Defendant-Appellant).
No. 84-0652.
Illinois Appellate Court  Second District.
Opinion filed June 28, 1985.
Rehearing denied August 8, 1985.
*456 Philip A. Nicolosi, of Rockford, for appellant.
Peter T. Sullivan and Daniel J. Cain, both of Sreenan & Cain, of Rockford, for appellee.
Affirmed in part and reversed in part.
*457 JUSTICE SCHNAKE delivered the opinion of the court:
This somewhat novel litigation began on December 2, 1983, when plaintiff filed a petition against defendant in which he alleged that he was the father of Margaret Loren McGaw, who was born on January 5, 1983, and that defendant was the child's mother. Plaintiff sought a declaration that he was the natural father of Margaret and orders setting forth (1) a visitation schedule for himself and his daughter and (2) appropriate support for the child. In addition, plaintiff requested that defendant be required to pay his costs. On December 14, 1983, the court permitted plaintiff to amend his petition on its face to indicate that it was being brought pursuant to the "Declaratory Judgment Act" (Ill. Rev. Stat. 1983, ch. 110, par. 2-701).
Defendant filed an answer in which, among other things, she admitted that she was the mother of Margaret Loren McGaw and that the child was born on January 5, 1983, but denied that plaintiff was the father. Also, in other pleadings, she again denied that plaintiff was the father of the child.
Plaintiff filed a motion for blood tests pursuant to the Act on Blood Tests to Determine Paternity (Ill. Rev. Stat. 1983, ch. 40, par. 1401 et seq.). The trial court granted this motion. Plaintiff then filed a motion under section 2-611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2-611) for reasonable expenses and attorney fees he incurred in this proceeding as a result of defendant's untrue pleadings. Approximately three months later, he filed a similar motion.
Defendant filed a motion to withdraw her answer to the petition and a motion to dismiss plaintiff's action for declaratory judgment. The trial court granted the motion to withdraw, but denied the motion to dismiss. Another motion to dismiss was likewise denied, and defendant then filed an answer substantially the same as her original answer.
Plaintiff filed a motion for summary judgment which included the results of the blood tests and the affidavit of Oscar Behzad, the director of laboratories for the American Red Cross Blood Services. Based upon the results of the blood tests and a reasonable degree of scientific certainty, Behzad's affidavit concluded that plaintiff, not William Koulis, was the natural father of Margaret Loren McGaw.
Subsequently, defendant filed a counterpetition in which she acknowledged that, in light of the results of the blood tests, plaintiff was the father of the minor child, and requested that the court order plaintiff to pay the medical and attendant hospital expenses she had incurred as a result of the birth of the child, child support, and the *458 fees of counsel and costs.
In an order filed on March 16, 1984, the court decreed, based on the petition and counterpetition, that plaintiff was the father of the child, and that plaintiff was entitled to visitation with his daughter.
On April 12, 1984, a bench trial commenced concerning the remaining issues.
The court entered an order on April 27, 1984, resolving the issues not adjudicated in its earlier order. That order awarded defendant custody of the minor child; granted plaintiff reasonable and seasonal visitation; ordered plaintiff to pay child support; required the parties to amend their daughter's birth certificate to reflect that plaintiff was her father, changing the child's last name from McGaw to Sullivan, and that henceforth the child shall be named Margaret Loren Sullivan; decreed that defendant was to pay the $1,358.20 in costs and expenses plaintiff had incurred in this cause; and that each party was to pay his or her own fees of counsel.
Defendant filed a motion for reconsideration, which the trial court denied on June 20, 1984. Defendant filed timely notice of appeal, and plaintiff filed notice of cross-appeal.
Defendant argues on appeal that the trial court erred: (1) by not requiring plaintiff to pay her maternity expenses; (2) by not ordering plaintiff to pay her attorney fees and by requiring her to pay plaintiff's costs and expenses; and (3) by ordering that the child's birth certificate be changed or amended to reflect that her surname was Sullivan and by declaring that henceforth she shall be named Margaret Loren Sullivan. In his cross-appeal, plaintiff argues that the trial court abused its discretion when it denied his request, under section 2-611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2-611), that defendant pay his attorney fees. We consider these issues in order.

I. DEFENDANT'S MATERNITY AND PREGNANCY-RELATED EXPENSES
 1 Defendant's first contention is that section 3 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1353) mandates that a father whose paternity has been established must pay the maternity expenses of the mother, apparently interpreting the language of this section as mandatory in all instances. Accordingly, she asserts that the trial court erred when it failed to require plaintiff to pay the expenses she incurred as a result of her pregnancy and the birth of the child.
Although the court's order does not provide expressly that plaintiff was not required to pay the defendant's pregnancy-related expenses, *459 the trial judge clearly intended this result when he stated at trial, in response to defense counsel's query regarding maternity expenses, that these had already been paid.
Initially, it should be noted that plaintiff filed his petition for adjudication of paternity and for visitation as a declaratory judgment action, not as a complaint under the provisions of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1351 et seq.). It is manifest, from a reading of the record, that plaintiff adopted this approach in recognition that the express language of section 4 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1354) limits the institution of a paternity action to the mother of a child born out of wedlock, to a pregnant woman whose child may be born out of wedlock, and to the Illinois Department of Public Aid. Parenthetically, it may be pointed out that section 7 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 2507, eff. July 1, 1985) provides that a man who is presumed or alleges himself to be the father of a child who is born out of wedlock may bring an action to determine the child's paternity.
Although a putative father may not be able to bring a paternity action under the current version of the Paternity Act (see, e.g., Allen v. Sullivan (1984), 139 Ariz. 142, 143, 677 P.2d 305, 306), it is firmly settled in this State, nonetheless, that the alleged father may bring a declaratory judgment action to establish the paternity of a child born out of wedlock regardless of the provisions of the Paternity Act (Pritz v. Chesnul (1982), 106 Ill. App.3d 969, 972-75; cf. Happel v. Mecklenburger (1981), 101 Ill. App.3d 107, 116-17). The Illinois rule is based upon and is in accord with decisions from other jurisdictions. See Kendrick v. Everheart (Fla. 1980), 390 So.2d 53, 57-61; Johannesen v. Pfeiffer (Me. 1978), 387 A.2d 1113; In re Mengel (1981), 287 Pa. Super. 186, 188-196, 429 A.2d 1162, 1164-67; Slawek v. Stroh (1974), 62 Wis.2d 295, 306, 215 N.W.2d 9, 15-16.
 2 In response to defendant's contention that she is entitled to pregnancy-related expenses under section 3 of the Paternity Act, plaintiff argues that the Paternity Act is not applicable here because his action was for a declaratory judgment and not under the Paternity Act. However, although defendant did not denominate her counterpetition expressly as an action brought under the Paternity Act, her pleading could reasonably be so construed. Adopting this construction of her counterpetition, then the question whether plaintiff is liable for her maternity expenses was properly before the trial court, which considered both plaintiff's petition and defendant's counterpetition in rendering judgment.
The purposes of an action brought under the Paternity Act are to *460 determine the identity of the father, to provide support for the child who was born out of wedlock, and to prevent the child from becoming a public charge. (Happel v. Mecklenburger (1981), 101 Ill. App.3d 107, 116.) In essence, this statutory proceeding exists to convert a father's moral obligation to support a child born out of wedlock into a legal obligation. Cessna v. Montgomery (1976), 63 Ill.2d 71, 90, overruled on other grounds in Dornfeld v. Julian (1984), 104 Ill.2d 261, 267; Pritz v. Chesnul (1982), 106 Ill. App.3d 969, 974.
Relying upon section 3 of the Paternity Act, which provides that a father whose paternity has been established "shall also be liable for the reasonable expenses of the mother during the period of her pregnancy, confinement and recovery" (Ill. Rev. Stat. 1983, ch. 40, par. 1353), the defendant asserts that the plaintiff must be held liable for her maternity expenses, even though she or a third party had already paid them. In addition, she contends that the trial court failed to apply this section of the Paternity Act because the court concluded that someone other than defendant had already paid those expenses.
Plaintiff responds that the Paternity Act should not be construed as designating an automatic rule that a father must pay all the mother's pregnancy expenses. Rather, he asserts that, at most, sections 3 and 9 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, pars. 1353, 1359), when read together, establish that the court has broad discretion to determine whether the father or mother, or both, shall shoulder the burden of those costs.
 3 A basic rule of statutory construction is that parts of a comprehensive statutory scheme should be read in pari materia in order to ascertain the legislature's intent and to avoid injustice. (Doran v. Department of Labor (1983), 116 Ill. App.3d 471, 475.) It follows naturally that statutory provisions relating to the same subject matter should be construed harmoniously where possible. (In re Marriage of Pick (1983), 119 Ill. App.3d 1061, 1065.) Although section 3, when read alone, appears to place a mandatory obligation upon the father to pay the mother's maternity expenses (see, e.g., Schultz v. Peeler (1973), 10 Ill. App.3d 937, 938), a consideration of sections 3 and 9 together leads to the conclusion that the trial court has broad discretion to determine whether one party or both shall be liable for the mother's pregnancy-related expenses.
Section 9 prescribes, among other things, that the court shall hear evidence regarding the child's requirements for support, as well as the expenses of the mother relating to her pregnancy, confinement, and recovery, and shall enter an order with respect to those matters that may be directed either to the father or mother, or both. In addition, *461 this section provides that, in ascertaining the amount of support and confinement expenses to be charged to the father, the court must consider both the father's financial condition and circumstances and the mother's resources and income. (People ex rel. Holland v. DeMichael (1979), 79 Ill. App.3d 974, 979.) Thus, it is clear that the court must consider the relative financial positions of the parties and may direct its resultant order to either party, or both. It is difficult to believe that the legislature could have intended the unjust result that the father is in every case required to pay the mother's maternity expenses, no matter how wealthy the mother may be or, conversely, how destitute the father's circumstances.
Defendant has not discussed the parties' relative financial positions, arguing only that the court below was obligated, under section 3 of the Paternity Act, to direct the plaintiff to pay her maternity expenses. In light of her failure to present any argument or supporting authority, we may properly deem the question whether the trial court abused its discretion to have been waived. (See, e.g., In re marriage of Anderson (1985), 130 Ill. App.3d 684, 688-89; Pecora v. Szabo (1982), 109 Ill. App.3d 824, 825-26; Williamson v. Opsahl (1981), 92 Ill. App.3d 1087, 1089.) We elect, however, to relax the waiver limitation and entertain this issue (see, e.g., Pritz v. Chesnul (1982), 106 Ill. App.3d 969, 971).
 4 The evidence established that defendant's out-of-pocket maternity expenses amount to $2,302.74, and that her health or medical insurance did not pay any of those expenses. William Koulis, defendant's other paramour, paid $687 of the hospital expenses and also paid for some of defendant's maternity dresses. Defendant paid for some of her maternity dresses as well as certain doctors' bills totalling $826. She related that the plaintiff gave her $100 after the child was born and $500 in October 1983, and that she thought the $100 was for the baby. Plaintiff testified that he gave defendant $1,475 in cash during the period of her pregnancy and thereafter, as well as lesser sums of money from time to time. In addition, he gave her money for hospital expenses, including $200 toward the balance of the doctor bill. Also, from September 1982 to October 1983, he gave defendant checks in excess of $2,000 for other expenses.
Although this is not a case in which the mother failed to present any evidence regarding either the costs of her pregnancy and delivery or the amounts paid (cf. Zito v. Butler (Utah 1978), 584 P.2d 868, 869), the trial court did not abuse its discretion when it failed to order plaintiff to pay defendant's expenses. Apparently, defendant concedes in her brief that those expenses were paid, which accords with the *462 trial court's finding. It is clear that Koulis paid a substantial portion of defendant's expenses. In view of the substantial payments made by plaintiff, we cannot conclude that the trial court abused its discretion in this regard.

II. DEFENDANT'S ATTORNEY FEES?
 5 Defendant argues next that the court erred when it required each party to pay the fees of his or her attorney. Her sole contention here is that section 9 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1359) mandates that the court assess the fees of counsel against the father once his paternity has been established. Plaintiff responds with the same arguments advanced in his response to first issue defendant raised. In particular, he maintains that the court below had the discretionary authority to allocate fees among the parties and is not required to assess against him the attorney fees defendant incurred, and that the trial court did not abuse its discretion when it required defendant to pay her own fees.
Section 9 of the Paternity Act provides that reasonable attorney's fees may be awarded after the court takes evidence upon the question of fees. (People ex rel. Holland v. DeMichael (1979), 79 Ill. App.3d 974, 981.) The court's order may be directed either to the father or mother, or both. (Ill. Rev. Stat. 1983, ch. 40, par. 1359.) This statutory provision clearly vests discretion in the trial court to award fees of counsel as it sees fit. There is no mandatory obligation to award fees against the father and to the mother.
 6 The record establishes that defendant incurred at least $4,176.45 in attorney fees in this case. However, defendant again does not present any authority to establish that the trial court abused its discretion in ordering each party to pay his or her respective fees of counsel. Thus, the question whether the court abused its discretion is waived. (See, e.g., In re Marriage of Anderson (1985), 130 Ill. App.3d 684, 688-89; Pecora v. Szabo (1982), 109 Ill. App.3d 824, 825-26; Williamson v. Opsahl (1981), 92 Ill. App.3d 1087, 1089.)

III. PLAINTIFF'S COSTS AND EXPENSES
 7 As part of the second issue she raises, defendant argues in a single sentence that no statutory authority or case law exists to support that part of the court's order that required her to pay the $1,358.20 in costs that plaintiff incurred during the course of this litigation. In particular, she maintains, correctly, that there is no provision in the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1351 et seq.) permitting the trial court to assess costs. See, e.g., People ex rel. *463 Adams v. Sanes (1968), 41 Ill.2d 381, 383, cert. denied (1969), 395 U.S. 910, 23 L.Ed.2d 223, 89 S.Ct. 1752; People ex rel. Perz v. Schneemilch (1967), 82 Ill. App.2d 371, 374-76.
The well-settled law in this State is that, in the absence of a statute or an agreement of the parties, the court may not make an award of the costs of litigation. (Saltiel v. Olsen (1981), 85 Ill.2d 484, 488-89; Hamer v. Kirk (1976), 64 Ill.2d 434, 437; Anderson v. Ferris (1984), 128 Ill. App.3d 149, 156; Sanelli v. Glenview State Bank (1984), 126 Ill. App.3d 411, 415; see People ex rel. Holland v. DeMichael (1979), 79 Ill. App.3d 974, 981.) There was no agreement between the parties regarding liability for plaintiff's costs, and the award of costs cannot be sustained under the provisions of the Paternity Act.
Plaintiff filed his lawsuit as a declaratory judgment action pursuant to the provisions of section 2-701 of the Code of Civil Procedure. Section 2-701(e) provides expressly that the court may tax costs as it deems just. This provision allows for the recovery of statutory costs, such as filing fees and the fees incurred as a consequence of the service of summons. (Hamer v. Kirk (1976), 64 Ill.2d 434, 444.) The statute vests the court with wide discretion with respect to the assessment and taxation of costs. Ill. Ann. Stat., ch. 110, par. 2-701(e), Historical and Practice Notes, at 13-14 (Smith-Hurd 1983).
Plaintiff related that he incurred $1,378.20 in costs during the course of the instant lawsuit. Those expenses included filing fees, witness fees, court reporter fees, and the costs of the service of a summons and a subpoena. In addition, plaintiff incurred $800 in costs for the blood tests the American Red Cross conducted. The court ordered defendant to pay $1,358.20 of plaintiff's costs. It is clear, under Hamer v. Kirk, that the court had the discretionary authority to order defendant to pay the filing, court reporter, and service fees. Similarly, section 3 of the Act on Blood Tests to Determine Paternity vests the trial court with discretion to apportion the compensation of expert witnesses between the parties in any civil action in which paternity is a relevant fact (Ill. Rev. Stat. 1983, ch. 40, par. 1401). (Ill. Rev. Stat. 1983, ch. 40, par. 1403.) Under section 6 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1356), the putative father is required to pay the costs of the blood tests unless he is unable to do so, in which case the tests shall be provided at the expense of the court. This provision should not bar the trial court from ordering defendant in this case to pay the costs plaintiff incurred for the blood tests. First, plaintiff did not bring his action pursuant to the Paternity Act. Second, the plaintiff asserted throughout the proceedings below that he *464 was the child's father, and the blood tests confirmed his assertion. The blood tests to which the parties and their child as well as Koulis submitted were not necessitated by plaintiff and would not have been necessary had defendant not resisted the plaintiff's voluntary attempt to establish that he was the father.
In light of all the facts and circumstances of this case, we cannot conclude that the trial court abused its discretion by ordering defendant to pay plaintiff's costs.

IV. CHANGE OF BIRTH CERTIFICATE
 8 Defendant's last assignment of error is that the trial court erred when it ordered that her daughter's last name be changed from McGaw to Sullivan and that henceforth the child shall be named Margaret Loren Sullivan.
In the trial court, plaintiff testified that he wanted his daughter's birth certificate amended, apparently to reflect that he was the child's father. Although there is no provision in the Paternity Act authorizing a change in a child's birth certificate, it is clear, under sections 12(4) and 17(1)(c) of the Vital Records Act (Ill. Rev. Stat. 1983, ch. 111 1/2, pars. 73-12(4), 73-17(1)(c)), that the trial court had authority to order the parties to amend the birth certificate to reflect that Sullivan was the father. See, e.g., Ashford v. Ziemann (1984), 99 Ill.2d 353, 362; Kendrick v. Everheart (Fla. 1980), 390 So.2d 53, 60.
At common law, a child who was born out of wedlock was nobody's child; the child was commonly described as fillius nullius and, sometimes, filius populi. He or she was without parents, kindred, or name. (People v. Moczek (1950), 407 Ill. 373, 380; see Smith v. Garber (1918), 286 Ill. 67, 70-71.) Today, however, such a child is considered the legal offspring of the mother. People v. Moczek (1950), 407 Ill. 373, 380; Smith v. Garber (1918), 286 Ill. 67, 71.
As our supreme court has recently enunciated, a parent can change the surname of its child only if the name change is in the child's best interest. (In re Marriage of Presson (1984), 102 Ill.2d 303, 307; Ill. Rev. Stat. 1983, ch. 96, par. 1; accord, In re Marriage of Omelson (1983), 112 Ill. App.3d 725.) The test that is applied, the best interest of the child, is identical to the standard employed in awarding custody under section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 602). In re Marriage of Presson (1984), 102 Ill.2d 303, 307.
In In re Marriage of Presson (1984), 102 Ill.2d 303, and In re marriage of Omelson (1983), 112 Ill. App.3d 725, the courts applied the standard set forth above in determining whether a mother whose *465 earlier marriage had been dissolved could change the surname of her child to that of her new husband. Although no Illinois case has determined what test should be applied regarding a name change of a child who was born out of wedlock, analogous Illinois authority and cases from at least one foreign jurisdiction suggest that the yardstick used in Presson and Omelson is apposite here. See In re G.L.A. (Ind. App. 1982), 430 N.E.2d 433; D.R.S. v. R.S.H. (Ind. App. 1980), 412 N.E.2d 1257 (both of which emphasized the best interest of the child in adjudicating a name change of a child who was born out of wedlock); cf. People ex rel. Vallera v. Rivera (1976), 39 Ill. App.3d 775, 777 (the father of a child born out of wedlock has a right to visit his offspring if the visits will not be detrimental to the child's best interests); Vanderlaan v. Vanderlaan (1972), 9 Ill. App.3d 260, 264-65 (the father of an "illegitimate" child may obtain custody of his offspring if it is in the child's best interests).
Section 602 of the Illinois Marriage and Dissolution of Marriage Act directs the trial court to "consider all relevant factors," including those explicitly enumerated there. However, this language does not require the court to set forth specific findings; the statute does require, nonetheless, that the record reflect that the court considered evidence of the statutory factors before making its custody decision. In re Marriage of Shedbalkar (1981), 95 Ill. App.3d 136, 138, and cases cited therein.
 9 In the present case, there is no evidence in the record that the trial court considered any of the factors that the courts, in the cases cited above, have discussed and upon which they have relied in adjudicating whether a parent may change a child's name. The court merely articulated its conclusion that the child's name should be changed and that henceforth she should be known as Margaret Loren Sullivan. We conclude, therefore, that the court erred in ordering the name change.

V. PLAINTIFF'S ATTORNEY'S FEES
 10 In his cross-appeal, plaintiff maintains that the court below abused its discretion when it denied his request, filed pursuant to the provisions of section 2-611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2-611), that defendant pay the fees of counsel which the plaintiff incurred in this cause. After making extensive comments regarding this matter, the trial judge determined that although defendant's pleadings were untrue, he would not conclude that defendant knew they were untrue, and therefore declined to award fees to plaintiff.
*466 In the answer defendant filed in this cause, she denied under oath that plaintiff was the father of her child; she made similar denials in other pleadings. However, once the blood tests established conclusively that plaintiff, not Koulis, was the father of the child, defendant admitted in her counterpetition that, based on the results of those tests, Sullivan was the child's father.
Section 2-611 provides, in essence, that a party who makes untrue allegations or denials in his or her pleadings without reasonable cause shall be required to pay the reasonable expenses and fees of counsel that the opposing litigant incurred as a result of the untrue pleading. The purpose of section 2-611 is to prevent a litigant from abusing the judicial process by penalizing the party who brings a vexatious or harassing action without legal foundation or an action that is based on false statements. (People ex rel. Donelson v. Cowling (1984), 128 Ill. App.3d 886, 889; see Sanelli v. Glenview State Bank (1984), 126 Ill. App.3d 411, 416.) The court may invoke this statute only in cases that fall strictly within its terms (People ex rel. Reliford v. Roberts (1983), 112 Ill. App.3d 351, 353), for the reason section 2-611 is penal in nature. (Launius v. Najman (1984), 129 Ill. App.3d 498, 505; People ex rel. Donelson v. Cowling (1984), 128 Ill. App.3d 886, 889; Sanelli v. Glenview State Bank (1984), 126 Ill. App.3d 411, 416.) It is manifest that the movant shoulders the burden of establishing that the allegations or denials were untrue and that they were advanced without reasonable cause. (People ex rel. Donelson v. Cowling (1984), 128 Ill. App.3d 886, 889; People ex rel. Reliford v. Roberts (1983), 112 Ill. App.3d 351, 353.) The application of section 2-611 is limited strictly to cases in which a litigant has abused the right of free access to the courts by pleading untrue statements of fact which the party knew or reasonably should have known were untrue. (People ex rel. Donelson v. Cowling (1984), 128 Ill. App.3d 886, 889; Third Establishment, Inc. v. 1931 North Park Apartments (1981), 93 Ill. App.3d 234, 243.) The determination of the trial court regarding the assessment of the fees of counsel is accorded great weight (People ex rel. Donelson v. Cowling (1984), 128 Ill. App.3d 886, 890); the court's discretionary decision in this matter will not be reversed unless the court abused its discretion (People ex rel. Reliford v. Roberts (1983), 112 Ill. App.3d 351, 353).
In the case at bar, the court expressed its displeasure with the substance of some of defendant's verified pleadings, concluding that the defendant's answer contained an untrue denial, i.e., that plaintiff was not the father of the child. Nonetheless, the court refused to assess against defendant plaintiff's attorney fees.
*467 The testimony established that defendant had sexual intercourse with both plaintiff and Koulis in April 1982, the month during which she conceived the child. Although there is some evidence in the record that may suggest that defendant realized or had reason to believe that plaintiff, not Koulis, was the father, it was not until the blood tests were taken and analyzed that the child's paternity was determined in conclusive fashion. At that juncture in the proceedings, defendant admitted, based on the results of the tests, that plaintiff was the father. In light of the facts and circumstances present in this case, we cannot say that the trial court abused its discretion when it refused to order defendant to pay the plaintiff's fees.
 11 Plaintiff argues, in part, that the trial court abused its discretion when it relied upon an erroneous reason for denying his request for fees under section 2-611. The court noted that it was unable to award plaintiff fees in this case because there was no evidence that plaintiff had already paid such fees. Plaintiff asserts that there is no prerequisite under section 2-611 that the moving party must have paid the fees before the court can order the opposing party to pay the fees the movant incurred. Plaintiff's assignment of error on this ground is unfounded for two reasons. First, the court emphasized that the rationale to which plaintiff now objects was not the controlling reason underlying its decision. Second, and more important, a reviewing court is not bound to accept the reasons the trial court gave in support of its judgment; the judgment may be sustained upon any ground that is warranted, regardless of whether the trial court relied upon it or whether the reason the court gave was correct. Material Service Corp. v. Department of Revenue (1983), 98 Ill.2d 382, 387; Roche v. County of Lake (1984), 126 Ill. App.3d 976, 982.
For the reasons above stated, the trial court's order is affirmed in all respects except that portion of the order which ordered the parties to amend the child's birth certificate to reflect that her surname was Sullivan and declared that henceforth her last name would be Sullivan.
Affirmed in part and reversed in part.
UNVERZAGT and LINDBERG, JJ., concur.