*In re* PERSON AND ESTATE OF BENNY A. NEWSOME *et al.*, Minors (John Lewis *et al.*, Petitioners-Appellants, v. Benny Newsome, Respondent-Appellee (Danny Ford, Respondent)).—*In re* CUSTODY OF BENNY NEWSOME, JR. (Benny Newsome, Petitioner-Appellee, v. John Lewis *et al.*, Respondents-Appellants).

Fourth District   No. 4—88—0022

Opinion filed July 26, 1988.

James K. Borbely, of Kurth, Wolgamot & Borbely, of Danville, for appellants.

James R. Burgess, of Urbana, for appellee.

JUSTICE LUND delivered the opinion of the court:

Patricia Morris died suddenly on June 26, 1987, leaving her two children, Benny A. Newsome (Benny, Jr.) and Tamika Caprise Smith. She, evidently, was still legally married to Joe Morris. Petitioners John and Annette Lewis, parents of Patricia, filed a petition under section 11—5 of the Probate Act of 1975 (Probate Act) (Ill. Rev. Stat. 1985, ch. 110½, par. 11—5), asking that they be appointed guardians of the persons of Benny, Jr., and Tamika. On July 7, 1987, respondent Benny Newsome filed a petition based on section 601 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1985, ch. 40, par. 601), alleging he was the father of Benny, Jr., and asking for custody of the boy. The circuit court of Vermilion County consolidated the two petitions for hearing. Petitioners subsequently filed a petition based on section 601 of the Marriage Act. They, too, asked for permanent custody of Benny, Jr.

After taking evidence, the trial court entered an order on January 8, 1988, which found respondent to be the natural father of Benny, Jr. In awarding custody to respondent, the court found that petitioners lacked standing to bring a petition under either the Probate Act or the Marriage Act, citing *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 491 N.E.2d 1150, as binding authority. Petitioners had physical custody at the time of the hearing, and the trial court granted a stay of judgment pending appeal. Petitioners appeal.

The trial court's ruling is based upon the theory that petitioners lacked standing. There is no finding made as to the best interest of the child. Further, petitioners and respondent dispute only the custodial right to Benny, Jr. Tamika is not a part of this appeal.

■ A portion of the Marriage Act is devoted to determining child custody. Section 601 of the Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 601) provides that a parent or a person other than a parent may file a petition for custody. Section 602 of the Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 602) supplies the standard for determining custody, which is the best interest of the child. In order for a person other than a parent to have standing to file a child custody petition, the child must not be "in the physical custody of one of his parents." (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2).) Our supreme court, in *Peterson*, has clearly recognized this condition for nonparents:

"[N]onparents must first show that the child is 'not in the physical custody of one of his parents.' When this requirement has been met, the nonparent will be considered for legal custody of the child under the 'best interest of the child' standard

(see Ill. Rev. Stat. 1981, ch. 40, par. 602), without necessity of first establishing the unfitness of the natural parents." (*Peterson*, 112 Ill. 2d at 53, 491 N.E.2d at 1152.)

Further, the limiting language of section 601(b)(2) is not to be construed as a mere technical requirement:

"[T]he standing requirement under section 601(b)(2) should not turn on who is in physical possession, so to speak, of the child at the moment of filing the petition for custody." *Peterson*, 112 Ill. 2d at 53-54, 491 N.E.2d at 1152.

■ In *Peterson*, the supreme court discussed the superior rights doctrine. The natural parents have the superior right to care, custody, and control of their children. (*Peterson*, 112 Ill. 2d at 51-52, 491 N.E.2d at 1151; *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234.) The superior rights doctrine is incorporated into the Marriage Act through the standing requirement discussed above. In order for a nonparent to have standing to seek custody of a child, the child must not be in the physical custody of either of his parents. (*Peterson*, 112 Ill. 2d at 52, 491 N.E.2d at 1152.) The superior rights doctrine has also been made a part of the Probate Act. (Ill. Rev. Stat. 1987, ch. 110½, par. 11—7; *Townsend*, 86 Ill. 2d at 509-10, 427 N.E.2d at 1235.) Because of the statutory adoption of the superior rights doctrine into the Probate Act, we find the standing requirement of the Marriage Act applies equally to the guardianship proceedings of the Probate Act.

In *Peterson*, the supreme court dealt with a petition filed by the maternal grandparents under section 601(b)(2) of the Marriage Act, seeking custody of their granddaughter. The petition was filed shortly after the mother's death. The mother and baby daughter, in *Peterson*, moved in with the maternal grandparents following the mother and father's divorce. Because of the mother's health, the grandparents provided most of the physical care for the child. There was no dispute about paternity. The mother died, and the father requested custody of the child. The grandparents refused, and both parties filed petitions for custody under section 601.

The supreme court ruled the grandparents had no standing to seek custody. The court found the child was in the physical custody of the mother while living at the grandparents' home, even though the mother was too weak to physically care for the child. The fact that the mother lived with her parents and the child was sufficient. Moreover, the father regularly exercised his visitation rights and acted immediately upon the death of the mother to obtain custody. The court stated:

"Within the meaning of section 601(b)(2) [the child] must be considered to have been, upon her mother's death, in the physical custody of her father. \*\*\*

[The child] was in the sole care of the [grandparents] only through the fortuitous occurrence of [the mother's] death. When they asserted a claim to custody following the mother's funeral, the claim was immediately challenged by the father. \*\*\* The appellate court erred in its holding that the [grandparents] had standing under section 601(b)(2) simply because they were, in a sense, in physical possession of the child at the time the petition was filed." (*Peterson*, 112 Ill. 2d at 54-55, 491 N.E.2d at 1153.)

There was no transfer of custody to the grandparents such as would grant them standing.

■ Petitioners argue the instant case is distinguishable from *Peterson* for three reasons. First, petitioners point out that *Peterson* involved modification of a prior custody order; part of a divorce decree. In the present case, the first attempt at involving the courts was petitioners' petition for guardianship following Patricia's death. Respondent counters by stating this distinction is without merit. We agree. Whether the courts were previously involved is not of significance. To say otherwise would give nonparents standing in situations where the parents were separated without court order. We cannot envision the supreme court, in *Peterson*, finding standing for the grandparents if the mother and father were separated and not divorced. The social policy that parents have the superior right to care, custody, and control of their children extends further than cases involving custody disputes determined by the courts.

■ Second, petitioners argue the father in *Peterson* provided a more stable home life than respondent has provided and will probably provide for Benny, Jr. In essence, the petitioners are arguing a "best interest of the child" standard. However, as our previous quotation from *Peterson* indicated, petitioners cannot argue which environment is better for Benny, Jr., prior to obtaining standing.

■ Third, petitioners argue there was no official determination that respondent was Benny, Jr.'s, father. In *Peterson*, there was no doubt the respondent was the child's father. Petitioners point to the slight evidence in the record regarding the paternity of Benny, Jr. Tamika, Benny, Jr.'s, 11-year-old sister, testified at the hearing. She stated that she never heard respondent claim to be Benny, Jr.'s, father. Also, according to Tamika and Annette Lewis, respondent spent much of his time away from the apartment. On the other hand,

Annette Lewis acknowledged that respondent did live, even if sporadically, with Patricia for a year or a year and one-half prior to Patricia's death. Benny, Jr., was born on May 27, 1986. So, it was possible that respondent was living with Patricia at the time of Benny, Jr.'s, conception. Respondent testified that he was the father of Benny, Jr. He stated that he had lived with Patricia from February 1, 1985, until her death.

We agree that the major factor distinguishing the facts in the present case from the *Peterson* case concerns the prior lack of a determination of respondent's parental status. We do not agree that because Benny, Jr., is illegitimate, petitioners have met the burden of showing the boy was not in the physical custody of a "parent."

We need not set forth the common law history of bastardy that began with the legal fiction of an illegitimate child being born without a father. Social demands resulted in paternity legislation. As early as 1827, a father of an illegitimate child was given rights as to custody. (See *Wright v. Bennett* (1845), 7 Ill. 587.) In 1972, the United States Supreme Court held that Peter Stanley, the resident father of his illegitimate children, was entitled, upon the death of the mother of the children, to their custody, absent a judicial hearing resulting in a finding of his lack of fitness. (*Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208.) The *Stanley* majority held that it was a violation of the equal protection clause to require a hearing and proof of neglect when removing children from married parents, divorced parents, and unmarried mothers, but denying such protection to the illegitimate father. *Stanley*, 405 U.S. at 658, 31 L. Ed. 2d at 562-63, 92 S. Ct. at 1216.

■ While upholding visitation rights of a natural father based upon the best interest test, our sister court stated in *LeHew v. Mellyn* (1985), 131 Ill. App. 3d 314, 315, 475 N.E.2d 913, 914:

"The United States Supreme Court has established that a natural father, absent a finding that he is unfit, has a due process right to maintain a parental relationship with his children. (*Quilloin v. Walcott* (1978), 434 U.S. 246, 255, 54 L. Ed. 2d 511, 519-20, 98 S. Ct. 549, 554-55; *Stanley v. Illinois* (1972), 405 U.S. 645, 649, 31 L. Ed. 2d 551, 557, 92 S. Ct. 1208, 1211-12.) This right has been recognized by the Illinois courts. (*People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 284 N.E.2d 291; *Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 436 N.E.2d 631.) In *Covenant Children's Home*, our supreme court observed that '[t]he interests of the father of an illegitimate child are no different from those of other

parents.' *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 22."

We conclude that equal protection requires us to treat the issue of petitioners' standing in the same manner as the grandparents were treated in *Peterson*. If respondent proves to be the actual father of Benny, Jr., and he had physical custody of the boy, petitioners are without standing under section 601(b)(2) of the Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2)).

■ A serious question does exist because the mother of Benny, Jr., was evidently married to another at the time of Benny, Jr.'s, birth. We note that the Illinois Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1987, ch. 40, par. 2501 *et seq.*) now provides the methods for the determination of a father's parental status when birth takes place in the absence of the marriage of the mother and father. The prior statute, the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, pars. 1351 through 1368), was repealed at the time of the adoption of the Parentage Act. A natural father, not married to the mother, can have parentage established under either section 6 or section 7 of the Parentage Act (Ill. Rev. Stat. 1987, ch. 40, pars. 2506, 2507). The mother's husband is presumed to be the father under section 5 of the Parentage Act (Ill. Rev. Stat. 1987, ch. 40, par. 2505). The presumption can only be rebutted by clear and convincing evidence. Ill. Rev. Stat. 1987, ch. 40, par. 2505(b).

■ Prior to a determination of a father's parentage under sections 6 or 7 of the Parentage Act, summons must be served on one who is the presumed father. (Ill. Rev. Stat. 1987, ch. 40, par. 2509.1(a).) In child custody proceedings, where the identity of the natural father has not been determined, and one claiming to be the father is before the court, the court's first duty is to address the issue of paternity. *LeHew*, 131 Ill. App. 3d at 316, 475 N.E.2d at 915.

■ ■ The evidence in the trial court indicated the marriage of Patricia Morris and Joe Morris existed at the time of the conception and birth of Benny, Jr. Joe Morris, then, was presumed to be the father of Benny, Jr., and was a necessary party to any proceedings relating to Benny, Jr.'s, parentage. The record indicates there was no service of summons on Joe Morris. Our court's decision in *In re Adoption of Ledbetter* (1984), 125 Ill. App. 3d 306, 465 N.E.2d 962, is controlling, and because there is an absence of service on Joe Morris, and he did not appear, the adjudication of parentage is null and void. Without the determination of parentage, which determination is the first order of the court's business, there cannot be a determination of standing.

We are aware that in certain cases a putative father's absence or misconduct would appear to make the results of this opinion unreasonable. Protection for the child in such cases is provided by the provisions of both the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, pars. 802—29, 803—30, 804—27, 805—31) and the Marriage Act (Ill. Rev. Stat. 1987, ch. 40, pars. 1501(D), 1507(B)(j)), which provisions allow for termination of parental rights based upon unfitness.

The judgment of the circuit court as to both parentage and standing is vacated, and the case is remanded for further proceedings not inconsistent with the views expressed in this opinion. If upon service of summons Joe Morris fails to appear or fails to file responsive pleadings, the trial court is directed to affirm the judgment heretofore entered.

Vacated and remanded with directions.

GREEN, P.J., and KNECHT, J., concur.